114

[No. 41426-1-II.   Division Two.   August 14, 2012.]

THE STATE OF WASHINGTON, *Respondent*, v. KAMARA K. CHOUAP, *Appellant*.

118

*Valerie Marushige*, for appellant.

*Mark E. Lindquist, Prosecuting Attorney*, and *Kathleen Proctor, Deputy*, for respondent.

¶1 ARMSTRONG, J. — Kamara Chouap appeals his convictions of two counts of attempting to elude a pursuing police vehicle and one count of second degree assault. He also appeals the jury's findings that his conduct threatened physical injury or harm to a person other than himself or a pursuing law enforcement officer and that he knowingly assaulted a law enforcement officer who was performing his official duties. Chouap argues (1) the State violated his

double jeopardy rights by convicting him of two eluding charges based on essentially the same conduct, (2) the trial court erroneously instructed the jury that it had to unanimously agree on the special verdicts in violation of *Bashaw*,[1] (3) the trial court sentenced him to a term that exceeds the statutory maximum, (4) the trial court erred by sealing jury questionnaires without a *Bone-Club*[2] analysis, and (5) the trial court erred in finding his exceptional sentence legally justified.

¶2 In his statement of additional grounds, Chouap argues that insufficient evidence supports the second degree assault conviction. He also contends that his counsel ineffectively represented him by failing to move to dismiss the second degree assault charge, not proposing a lesser included instruction on third or fourth degree assault, and inadequately cross-examining Deputy Brian Heimann regarding inconsistent statements. Finding no reversible error, we affirm.

## FACTS

¶3 On March 5, 2010, at approximately 2:46 a.m., two Tacoma police officers saw Chouap driving a black Cadillac with the license plate 745YSX. Chouap was traveling west on South 56th Street in University Place. When the officers started following Chouap with their emergency lights activated, Chouap accelerated rapidly.

¶4 Chouap drove 70 m.p.h. on several streets with posted speed limits of 30 or 35 m.p.h. After a short chase, Chouap hit a speed bump; his car became airborne and sparked. The officers terminated the pursuit because Chouap's reckless driving was dangerous to the officers and the public.

¶5 But the officers continued to look for the vehicle and spotted it 15 to 20 minutes later. Chouap was still traveling

---

[1] *State v. Bashaw*, 169 Wn.2d 133, 234 P.3d 195 (2010), *overruled by State v. Guzman Nuñez*, 174 Wn.2d 707, 285 P.3d 21 (2012).

[2] *State v. Bone-Club*, 128 Wn.2d 254, 906 P.2d 325 (1995).

at high speed, with the car "fish-tail[ing]" and nearly out of control. 6 Report of Proceedings (RP) at 96. The officers again started pursuing Chouap. After a high-speed chase through residential areas, the officers lost sight of Chouap's vehicle. One officer testified that in his opinion, Chouap's driving endangered himself, other people, and property.

¶6 Shortly thereafter, a Lakewood police officer saw Chouap driving at a normal speed. The officer knew of the earlier chase and pulled up behind Chouap. Chouap immediately accelerated to approximately 80 m.p.h. in a 35 m.p.h. zone. The officer activated his lights and siren, and another officer joined the chase. At one point, a car ahead of Chouap had to pull to the right of the road to avoid being struck by Chouap's vehicle.

¶7 Chouap ultimately drove onto Interstate 5 northbound, maintaining a speed of 70 to 80 m.p.h. Chouap drove erratically, waiting until the last minute to exit the highway. Lakewood police continued the pursuit onto State Route 512 and then Pacific Avenue.

¶8 The police tried to deploy "stop sticks" in front of the Cadillac, but Chouap continued southbound on Pacific Avenue, "bl[owing] through" a stop sign before turning onto a side street. 7 RP at 188-89. A pursuing officer saw a Pierce County sheriff in uniform standing at the trunk of his police vehicle parked alongside the road; the sheriff's vehicle had overhead emergency lights on. Pierce County Deputy Jeffrey Jorgenson testified that he and his partner, Deputy Heimann, intended to deploy "stop sticks" on the road to stop the Cadillac. 6 RP at 131. Chouap moved to the right of the roadway and accelerated, driving directly at Deputy Jorgenson and the sheriff's vehicle. Deputy Jorgenson ran toward the passenger side of the sheriff vehicle and jumped into the car. The pursuing officer testified that it appeared Chouap came "[f]airly close" to striking Deputy Jorgenson. 7 RP at 193. Deputy Jorgenson testified that he was concerned for his safety.

¶9 One of the pursuing officers ultimately pulled up and made contact with Chouap's vehicle, causing it to spin out. Chouap exited the vehicle while it was still rolling and began to flee on foot. With the help of a police dog, the officers apprehended Chouap.

## PROCEDURE

¶10 The State charged Chouap with two counts of attempting to elude a pursuing police vehicle with an aggravating factor of endangering one or more persons other than the defendant or pursuing officer, and second degree assault with an aggravating factor of committing the crime against a law enforcement officer.

¶11 At trial, defense counsel and the prosecutor agreed to use confidential jury questionnaires. Based on the jurors' answers, defense counsel and the prosecutor spoke with several potential jurors in open court while the rest of the venire was excused. Following trial, the court ordered the jury questionnaires sealed and both counsel agreed to the order.

¶12 A jury found Chouap guilty of count I, attempting to elude a pursuing police vehicle (Tacoma police); count II, attempting to elude a pursing police vehicle (Lakewood police); and count III, second degree assault. The jury answered "yes" to two special verdicts: (1) that Chouap's driving threatened physical injury or harm to a person other than himself or a pursuing law enforcement officer and (2) that Chouap knowingly assaulted a law enforcement officer who was performing his official duties. Clerk's Papers (CP) at 81-82.

¶13 The trial court sentenced Chouap to concurrent sentences of 29 months for his convictions of attempting to elude a pursuing police vehicle, with a sentence enhancement for 12 months. In addition, the trial court imposed a consecutive, exceptional sentence of 120 months for Chouap's second degree assault conviction for a total of 161 months in confinement and 18 months of community custody.

## ANALYSIS

### I. DOUBLE JEOPARDY

¶14 Chouap argues that his two convictions for attempting to elude a pursing police vehicle violate his constitutional right against double jeopardy. He reasons that the unit of prosecution is the alleged driving of a vehicle in a reckless manner while attempting to elude a police vehicle. The State responds that the convictions do not violate double jeopardy because the evidence shows two units of prosecution: the first ended when Chouap successfully eluded the Tacoma police and returned to normal driving; the second began when Lakewood police started pursuing him.

■ ■ ¶15 We review double jeopardy claims de novo. *State v. Kelley*, 168 Wn.2d 72, 76, 226 P.3d 773 (2010). The United States Constitution provides that a person may not be subject "for the same offense to be twice put in jeopardy of life or limb." U.S. CONST. amend. V. Similarly, the Washington Constitution provides that a person may not be put in jeopardy twice for the same offense. WASH. CONST. art. I, § 9. Both clauses prohibit multiple punishments for the same offense, but they do not prohibit separate punishment for different offenses. *In re Pers. Restraint of Percer*, 150 Wn.2d 41, 48-49, 75 P.3d 488 (2003).

■ ■ ¶16 "[D]ouble jeopardy protects a defendant from being convicted twice under the same statute for committing just one unit of the crime." *State v. Adel*, 136 Wn.2d 629, 634, 965 P.2d 1072 (1998). To decide whether a defendant's rights against double jeopardy were violated, we must determine what "unit of prosecution" the legislature intended as the punishable act under that statute. *In re Pers. Restraint of Davis*, 142 Wn.2d 165, 172, 12 P.3d 603

(2000). "A unit of prosecution can be either an act or a course of conduct." *State v. Hall*, 168 Wn.2d 726, 731, 230 P.3d 1048 (2010). Although unit of prosecution cases are of constitutional dimension, we resolve them by examining the relevant statute to determine legislative intent. *Adel*, 136 Wn.2d at 634. If the legislature's intent is unclear, we construe the ambiguity in the defendant's favor by applying the rule of lenity. *State v. Graham*, 153 Wn.2d 400, 405, 103 P.3d 1238 (2005).

¶17 Chouap was convicted of two counts of attempting to elude a pursuing police vehicle under former RCW 46.61-.024(1) (2008), which provides:

> Any driver of a motor vehicle who willfully fails or refuses to immediately bring his vehicle to a stop and who drives his vehicle in a reckless manner while attempting to elude a pursuing police vehicle, after being given a visual or audible signal to bring the vehicle to a stop, shall be guilty of a class C felony. The signal given by the police officer may be by hand, voice, emergency light, or siren. The officer giving such a signal shall be in uniform and the vehicle shall be equipped with lights and sirens.

¶18 Thus, the State had to prove that Chouap (1) willfully failed (2) to immediately bring his vehicle to a stop (3) and drove in a reckless manner (4) while attempting to elude police after a uniformed officer had signaled him to stop. *Cf. State v. Tandecki*, 153 Wn.2d 842, 848, 109 P.3d 398 (2005). The statute "proscribes unreasonable conduct in resisting law enforcement activities." *State v. Trowbridge*, 49 Wn. App. 360, 362, 742 P.2d 1254 (1987). The legislature criminalized attempting to elude a police vehicle to address the dangers of high speed chases. *State v. Malone*, 106 Wn.2d 607, 611, 724 P.2d 364 (1986).

¶19 Chouap relies on the Washington Supreme Court's decision in *Adel* for the proposition that his conduct constitutes one unit of prosecution. *Adel* is, however, distinguishable by its facts. The *Adel* court held that two separately located "stashes" of marijuana—one found in Adel's conve-

nience store (less than 0.2 gram) and the other found in Adel's car (0.1 gram)—constituted one unit of prosecution for simple possession. *Adel*, 136 Wn.2d at 631, 636-37. Former RCW 69.50.401(e) (1998) provided that "any person found guilty of possession of forty grams or less of mari-[j]uana shall be guilty of a misdemeanor." The court concluded that the statute was ambiguous as to whether the legislature intended to punish a person multiple times based on the drug being stashed in multiple places. *Adel*, 136 Wn.2d at 635. Because of the ambiguity, the court applied the rule of lenity to conclude that Adel had committed "only one count of simple possession." *Adel*, 136 Wn.2d at 635.

¶20 In contrast, in *Graham*, the crime at issue was reckless endangerment, described as reckless conduct " 'not amounting to drive-by shooting but that creates a substantial risk of death or serious physical injury to another person.' " *Graham*, 153 Wn.2d at 405 (quoting RCW 9A.36-.050(1)). According to the court, the plain language of the reckless endangerment statute demonstrated that the unit of prosecution for reckless endangerment is each person endangered and not each endangering act. *Graham*, 153 Wn.2d at 408. The court concluded that the State was entitled to charge Graham with three counts of reckless endangerment for her erratic driving that endangered the passengers in the vehicle. *Graham*, 153 Wn.2d at 403, 408.

¶21 Recently, the Washington Supreme Court addressed a double jeopardy challenge to multiple counts of witness tampering in *Hall*, 168 Wn.2d 726. Hall tried to call a witness over 1,200 times while in jail, attempting to persuade the witness to believe that she had an obligation not to testify or to testify falsely. *Hall*, 168 Wn.2d at 729. The State charged Hall with four counts of witness tampering, and a jury convicted Hall of three counts. *Hall*, 168 Wn.2d at 729. The court reversed, concluding that the witness tampering statute criminalizes the "ongoing attempt to persuade a witness not to testify in a proceeding" and that

Hall's multiple convictions constituted double jeopardy. *Hall*, 168 Wn.2d at 734, 737. The court stated that "[o]ur determination might be different if Hall had changed his strategy . . . or if he had been stopped by the State briefly and found a way to resume his witness tampering campaign." *Hall*, 168 Wn.2d at 737.

¶22 Here, the essential question is whether attempting to elude a pursuing police vehicle is a continuing offense or whether the accused commits it anew with each pursuit. The evidence shows two separate pursuits, one in Tacoma by Tacoma police and one in Lakewood by Lakewood police. The first pursuit ended when the Tacoma police officers stopped pursuing Chouap because of his dangerous driving. At that point, the first crime of attempting to elude was completed because Chouap had successfully eluded the pursuing police vehicle.

¶23 A short time later, a Lakewood police officer saw Chouap driving southbound on Bridgeport Way at a normal speed. The second pursuit then followed and continued through the assault on Deputy Jorgenson, ending when Chouap lost control of his car shortly thereafter. The second pursuit was separated from the first by time, by Chouap's return to lawful driving, and by different pursuing police officers. We hold that Chouap's double jeopardy rights were not violated by his two convictions for attempting to elude a police vehicle because each was a separate unit of prosecution.

## II. SPECIAL VERDICT UNANIMITY INSTRUCTION

¶24 Relying on *Bashaw*, 169 Wn.2d 133, Chouap argues for the first time on appeal that the trial court erred in instructing the jury that it must be unanimous to return a "yes" or "no" answer to the two special verdicts. Br. of Appellant at 13. Because the Supreme Court recently overruled *Bashaw*, Chouap's claim fails. *State v. Guzman Nuñez*, 174 Wn.2d 707, 719, 285 P.3d 21 (2012).

¶25 A jury must unanimously find beyond a reasonable doubt any aggravating circumstances that increase a defendant's sentence. *Nuñez*, 174 Wn.2d at 712 (citing *Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000); *Blakely v. Washington*, 542 U.S. 296, 313-14, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004)). In *Nuñez*, our Supreme Court held that the legislature intended complete jury unanimity to impose or reject an aggravating circumstance under the Sentencing Reform Act of 1981:

> "The facts supporting aggravating circumstances shall be proved to a jury beyond a reasonable doubt. The jury's verdict on the aggravating factor must be unanimous, and by special interrogatory. If a jury is waived, proof shall be to the court beyond a reasonable doubt, unless the defendant stipulates to the aggravating facts."

*Nuñez*, 174 Wn.2d at 715 (quoting RCW 9.94A.537(3)). The court therefore rejected the *Bashaw* rule that had previously approved of a nonunanimous jury decision for an aggravating circumstance. *Nuñez*, 174 Wn.2d at 718-19.

¶26 Here, the trial court instructed the jury that it must be unanimous to either accept or reject the aggravating circumstance. This instruction is correct in light of *Nuñez*. Accordingly, we affirm.

III. STATUTORY MAXIMUM—SECOND DEGREE ASSAULT

¶27 The trial court sentenced Chouap to 120 months in confinement and 18 months of community custody for his second degree assault conviction. The standard range for this offense was 63 to 84 months and the maximum term was 120 months. In his appellate brief, Chouap challenged his assault sentence, arguing that this court needed to remand for resentencing because the sentence exceeds the

statutory maximum under former RCW 9.94A.701(8) (2010), which provides:[3]

> The term of community custody specified by this section shall be reduced by the court whenever an offender's standard range term of confinement in combination with the term of community custody exceeds the statutory maximum for the crime as provided in RCW 9A.20.021.

During oral argument, Chouap's counsel conceded that the statutory provision did not apply here because the trial court sentenced Chouap outside of the standard range.[4] We agree and need not consider this issue further.

## IV. SEALING JURY QUESTIONNAIRES

¶28 Chouap next contends that the trial court violated the public's right to an open and accessible court proceeding by sealing the jury questionnaires without conducting a *Bone-Club* analysis. *See Bone-Club*, 128 Wn.2d 254. The State responds that Chouap agreed to using a jury questionnaire, defense counsel used the information from the jury questionnaires during voir dire, and both parties approved of using the confidential jury questionnaires and the trial court's order sealing them.

¶29 Article I, section 10 of our state constitution guarantees the public's right to open judicial proceedings, providing, "Justice in all cases shall be administered openly. . . ." To protect the public trial rights, a trial court

---

[3] Effective June 10, 2010, RCW 9.94A.701(8) was recodified as RCW 9.94A-.701(9). LAWS OF 2010, ch. 224, § 5.

[4] The Supreme Court recently decided that RCW 9.94A.701(9) requires the trial court to reduce the defendant's term of community custody where the defendant's total term of confinement and community custody may exceed the statutory maximum. *State v. Boyd*, 174 Wn.2d 470, 275 P.3d 321 (2012). The court also held that the notation approved of in *In re Personal Restraint of Brooks*, 166 Wn.2d 664, 211 P.3d 1023 (2009), does not satisfy statutory requirements under RCW 9.94A.701(9). The court did not address the issue presented in this case, where the trial court sentenced Chouap beyond the standard range. Therefore, *Boyd* does not control here. We conclude that an offender sentenced within the standard range term of confinement is the threshold for applying former RCW 9.94A.701(8).

128

must weigh the five *Bone-Club* factors and enter findings before closing a criminal hearing or trial. *In re Pers. Restraint of Stockwell*, 160 Wn. App. 172, 178, 248 P.3d 576 (2011), *petition for review filed*, No. 85669-9 (Wash. Mar. 2, 2011). We review a defendant's claim that the trial court violated his right to a public trial de novo. *State v. Brightman*, 155 Wn.2d 506, 514, 122 P.3d 150 (2005).

¶30 In *Stockwell*, we rejected the defendant's argument that the trial court violated his public trial right because the defendant (1) stipulated to using the jury questionnaires, (2) did not object to the trial court sealing the questionnaires, (3) used the questionnaires in voir dire, and (4) did not argue that he was actually prejudiced by the sealed questionnaires.[5] *Stockwell*, 160 Wn. App. at 180. We also noted that the sealing affected only the public's right to open justice, not the defendant's right to a public trial. *Stockwell*, 160 Wn. App. at 180-81.

¶31 In *Smith*, we found "no courtroom closure and, therefore, no need for the trial court to consider the *Bone-Club* factors." *State v. Smith*, 162 Wn. App. 833, 848, 262 P.3d 72 (2011), *review denied*, 173 Wn.2d 1007 (2012). There, the defendants agreed to sealing the questionnaires after voir dire and used the questionnaires during voir dire

---

[5] Two different panels of this court have concluded that *State v. Momah*, 167 Wn.2d 140, 217 P.3d 321 (2009) and *State v. Strode*, 167 Wn.2d 222, 217 P.3d 310 (2009) are no longer controlling authority on the issue of the public's right to open court proceedings in light of *Presley v. Georgia*, 558 U.S. 209, 130 S. Ct. 721, 175 L. Ed. 2d 675 (2010). *State v. Leyerle*, 158 Wn. App. 474, 481, 242 P.3d 921 (2010); *State v. Paumier*, 155 Wn. App. 673, 685, 230 P.3d 212, *review granted*, 169 Wn.2d 1017 (2010). We disagree and follow this court's opinion in *Stockwell*, 160 Wn. App. at 181. In *Presley*, the trial court closed the courtroom during voir dire, excluding the defendant's uncle from the courtroom, and the defendant objected. *Presley*, 558 U.S. at 210. The Georgia Supreme Court held that "trial courts need not consider alternatives to closure absent an opposing party's proffer of some alternatives" and the Supreme Court reversed, holding that "trial courts are required to consider alternatives to closure even when they are not offered by the parties." *Presley*, 558 U.S. at 214. *Presley* did not consider whether an erroneous court closure necessarily results in structural error, particularly where, as here, the defendant did not object to the alleged closure, participated in it, and now seeks to use the alleged closure to collaterally attack his conviction. *See also State v. Bowen*, 157 Wn. App. 821, 828-30, 239 P.3d 1114 (2010). Accordingly, we apply the principles of *Momah* and *Strode*.

to identify and engage with jurors who requested to be questioned individually. *Smith*, 162 Wn. App. at 847. We also noted that the defendants used the questionnaires in open court where the public could observe. *Smith*, 162 Wn. App. at 847.

¶32 Chouap relies on Division One's decision in *State v. Beskurt*, 159 Wn. App. 819, 246 P.3d 580, *review granted*, 172 Wn.2d 1013 (2011), to argue that we should remand for a *Bone-Club* analysis. In *Beskurt*, Division One of this court held that the trial court erred by sealing juror question-naires after voir dire, and before trial, without first con-ducting a *Bone-Club* analysis. *Beskurt*, 159 Wn. App. at 823.

¶33 Here, the parties both agreed to a jury question-naire. Before voir dire in open court, the State commented:

> Just for the—I think it is the *Bone*[-]*Club* analysis—I believe that's the case—the courtroom is open to the public. Nobody has been excluded to be [sic] here. Anyone that wanted to be here, could be here. The record should reflect there is nobody present in the gallery at all, but they could be, it is an open courtroom. Nobody has excluded anyone from being here dur-ing the jury selection process.

RP at 76. After the trial was over, the trial judge ordered the jury questionnaires sealed and both parties agreed to the order. There is no evidence that jury selection did not proceed in open court. Nor is there any evidence that the court denied either party, or any member of the public, access to the questionnaires. Chouap agreed to use and did use the juror questionnaires to question prospective jurors. Following *Stockwell* and rejecting *Beskurt*, we find no error that Chouap can raise.

## V. Exceptional Sentence

### Consecutive Sentences

¶34 Chouap next challenges the trial court's decision to run his assault sentence consecutively to his eluding sen-

tences. Chouap reasons that the trial court's decision to impose an exceptional consecutive sentence was based on an invalid special verdict (the claimed *Bashaw* error) and that double jeopardy barred his two eluding convictions. And in his statement of additional grounds, Chouap contends that the trial court improperly sentenced him above the statutory maximum.

¶35 We review the propriety of an exceptional sentence by asking (1) whether the trial court's reasons for imposing it are supported by the record (clearly erroneous standard) or (2) justify a departure from the standard range (de novo standard), and (3) whether the sentence is clearly too excessive or too lenient (abuse of discretion standard). *State v. Alvarado*, 164 Wn.2d 556, 560-61, 192 P.3d 345 (2008).

¶36 Former RCW 9.94A.535 (2008) states in relevant part:

> The court may impose a sentence outside the standard sentence range for an offense if it finds, considering the purpose of this chapter, that there are substantial and compelling reasons justifying an exceptional sentence. Facts supporting aggravated sentences, other than the fact of a prior conviction, shall be determined pursuant to the provisions of RCW 9.94A.537.

¶37 The trial court found that Chouap had an offender score of 12 on counts I, II, and III. The court reasoned that if it imposed the standard range sentence and allowed Chouap to serve the sentences concurrently, Chouap would receive no punishment for his two eluding convictions. The trial court concluded that "substantial and compelling reasons" supported an exceptional sentence that would punish Chouap in proportion to the seriousness of the offenses and his criminal history. CP at 110-11. Thus, after sentencing Chouap to concurrent sentences for his eluding convictions, the trial court imposed a consecutive sentence for his assault conviction. We have already rejected both Chouap's double jeopardy argument and his

attempt to challenge the special verdict instruction. Accordingly, we conclude that the evidence and the law support the trial court's decision to impose an exceptional sentence under former RCW 9.94A.535.

## VI. Statement of Additional Grounds (SAG)

### A. Sufficiency of the Evidence

¶38 Chouap argues that the State failed to prove the second degree assault charge. In a related argument, Chouap faults his counsel for failing to move to dismiss the charge. We disagree with both challenges.

¶39 In considering a challenge to the sufficiency of the evidence, we construe the evidence in the light most favorable to the State and ask whether any rational trier of fact could have found guilt beyond a reasonable doubt. *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). A defendant who challenges the sufficiency of the evidence admits the truth of the State's evidence and all reasonable inferences that can be drawn from that evidence. *Salinas*, 119 Wn.2d at 201. We defer to the jury on conflicting testimony issues, witnesses credibility, and the evidence's persuasiveness. *State v. Thomas*, 150 Wn.2d 821, 874-75, 83 P.3d 970 (2004), *abrogated in part on other grounds by Crawford v. Washington*, 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004).

¶40 Here, the trial court instructed the jury that to convict Chouap of second degree assault, the State had to prove:

(1) That on or about March 5, 2010, the defendant assaulted Jeffrey Jorgenson with a deadly weapon; and

(2) That this act occurred in the State of Washington.

CP at 74. In a separate jury instruction, the court defined "assault" as

an act done with intent to inflict bodily injury upon another, tending but failing to accomplish it and accompanied with the

132

apparent present ability to inflict the bodily injury if not prevented. It is not necessary that bodily injury be inflicted.

An assault is also an act done with the intent to create in another apprehension and fear of bodily injury, and which in fact creates in another a reasonable apprehension and imminent fear of bodily injury even though the actor did not actually intend to inflict bodily injury.

CP at 67.

¶41 Chouap reasons that Deputy Jorgenson's testimony failed to establish that he was in fear of bodily injury. Deputy Jorgenson testified that Chouap's driving caused him concern for his safety and that he feared he might be hit and severely injured when Chouap accelerated and drove toward him. Specifically:

[Prosecutor]: Did the defendant's actions driving directly at you cause you concern for your safety?

[Deputy Jorgenson]: Most definitely, yes.

. . . .

[Prosecutor]: If Deputy Heimann wouldn't have pulled forward and taken evasive action, the route the defendant was taking, would the defendant have struck your patrol car with the black Cadillac?

[Deputy Jorgenson]: Yes, sir.

[Prosecutor]: Did you fear for your life at that point? I mean, did you fear you might be hit, severely injured?

[Deputy Jorgenson]: Not quite at the time. I was more worried about getting out of the way, but once I had time to think about it, yes.

6 RP at 135-38.

¶42 Chouap relies in part on *State v. Bland*, 71 Wn. App. 345, 860 P.2d 1046 (1993), *overruled on other grounds by State v. Smith*, 159 Wn.2d 778, 154 P.3d 873 (2007), for his argument that the State failed to prove Deputy Jorgenson's "fear." *See* SAG at 6, 13. In *Bland*, the court concluded that the victim, who was sleeping when the bullet came through

his window, did not experience apprehension or fear sufficient to support a second degree assault conviction. *Bland*, 71 Wn. App. at 355. In contrast, Deputy Jorgenson testified that he saw Chouap move from the roadway to the right and accelerate directly at him and the sheriff's vehicle. Officer James Syler testified that it appeared Chouap came "[f]airly close" to striking Deputy Jorgenson. 7 RP at 193. And Deputy Jorgenson testified that he did fear that he might be hit and severely injured when Chouap accelerated and drove toward him. We conclude that the evidence sufficiently supports the assault charge.

## B. Effective Assistance of Counsel

¶43 Chouap claims his counsel failed to (1) move to dismiss the second degree assault charge, (2) propose a lesser included instruction on third or fourth degree assault, and (3) cross-examine Officer Heimann regarding inconsistent statements.

¶44 The federal and state constitutions guarantee a criminal defendant the right to effective assistance of counsel. U.S. CONST. amend. VI; WASH. CONST. art. I, § 22. A defendant claiming ineffective assistance of counsel must show deficient performance and resulting prejudice. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). To prove deficient performance, the defendant must show that counsel's performance fell "below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. "There is a strong presumption that counsel's performance was reasonable." *State v. Kyllo*, 166 Wn.2d 856, 862, 215 P.3d 177 (2009). "When counsel's conduct can be characterized as legitimate trial strategy or tactics, performance is not deficient." *Kyllo*, 166 Wn.2d at 863. To satisfy the prejudice prong, the defendant must show that the outcome of the proceedings would have differed but for counsel's deficient performance. *State v. Grier*, 171 Wn.2d 17, 34, 246 P.3d 1260 (2011). "[T]he proper standard for attorney performance is that of reasonably effective assistance." *Strickland*, 466 U.S. at 687.

134

### i. Second Degree Assault

¶45 Chouap argues that his counsel should have moved to dismiss the second degree assault charge because the State failed to prove that Deputy Jorgenson was in "imminent fear of bodily injury." SAG at 5-6.

¶46 As we discussed above, the State sufficiently proved that Deputy Jorgenson feared for his safety. To demonstrate that counsel was ineffective for failing to move to dismiss, Chouap must show that the trial court likely would have granted such a motion. *See Grier*, 171 Wn.2d at 33-34. Because Deputy Jorgenson's testimony was sufficient to prove his fear, the trial court would not have granted the motion. Thus, Chouap fails to show defense counsel's performance fell below the acceptable standard.

### ii. Lesser Included Offense

¶47 Chouap argues that defense counsel should have requested a lesser included jury instruction for third or fourth degree assault.

¶48 A defendant is entitled to a lesser included offense instruction if (1) each of the elements of the lesser offense is a necessary element of the offense charged (legal prong) and (2) the evidence supports an inference that the lesser crime was committed (factual prong). *State v. Workman*, 90 Wn.2d 443, 447-48, 584 P.2d 382 (1978). The factual prong of *Workman* is satisfied when substantial evidence supports a rational inference that the defendant committed only the lesser included or inferior degree offense, to the exclusion of the greater one. *State v. Fernandez–Medina*, 141 Wn.2d 448, 461, 6 P.3d 1150 (2000).

¶49 Whether to request a lesser included offense instruction is a tactical decision for which we grant counsel considerable deference. *Grier*, 171 Wn.2d at 39. And to prevail on an ineffective assistance of counsel claim, the defendant bears the burden of establishing the absence of any conceivable legitimate strategy. *Grier*, 171 Wn.2d at 42.

¶50 Chouap argues that Deputy Jorgenson was not in "imminent fear of bodily injury." SAG at 8. He does not, however, provide the court with anything more than a bare assertion that his counsel should have requested a lesser included jury instruction for third or fourth degree assault.

¶51 In closing, Chouap's defense counsel argued that "Deputy Jorgenson was not worried at the time, and that's part of the element" of second degree assault. 7 RP at 294. Defense counsel concluded that the State did not prove that Deputy Jorgenson was in a "reasonable apprehension and imminent fear of bodily injury." 7 RP at 294. Given the evidence, Chouap and his defense counsel reasonably could have believed that an all or nothing strategy was the best approach to achieve an acquittal. *Grier*, 171 Wn.2d at 43. Chouap fails to show the absence of any conceivable legitimate strategy; thus, his claim fails.

iii. Cross-Examination

¶52 Chouap argues that his defense counsel ineffectively represented him when he failed to explore an inconsistency between Deputy Heimann's testimony and the probable cause declaration. He claims that this inconsistency further supports a finding that he did not commit second degree assault.

¶53 During direct examination, the State asked Deputy Heimann, "How close did the defendant come to hitting Deputy Jorgenson and your patrol car?" Deputy Heimann responded, "Within four feet." 7 RP at 231. In the declaration for determination of probable cause, Sunni Ko from the Pierce County Prosecutor's Office declared that Chouap drove "within 20 feet of the patrol vehicle." CP at 105. Chouap argues that this inconsistency goes to the fear element of second degree assault. Chouap's conviction for second degree assault, however, required the jury to find that Deputy Jorgenson experienced "a reasonable apprehension and imminent fear of bodily injury." CP at 67. The apparently inconsistent estimate in the prosecutor's prob-

136

able cause statement does not necessarily impeach Deputy Jorgenson. The discrepancy between Deputy Jorgenson's testimony and the probable cause statement is not sufficient to assume the jury would have acquitted Chouap if counsel had noted the discrepancy. Thus, Chouap fails to show any prejudice. *Grier*, 171 Wn.2d at 33-34.

¶54 Affirmed.

JOHANSON, A.C.J., and PENOYAR, J., concur.