[No. 30466-3-III.    Division Three.    March 18, 2014.]

THE STATE OF WASHINGTON, *Respondent*, v. JOE ANTHONY MATA, *Appellant*.

*Dennis W. Morgan*, for appellant.

*James P. Hagarty*, *Prosecuting Attorney*, and *David B. Trefry*, *Deputy*, for respondent.

¶1  SIDDOWAY, A.C.J. — Joe Mata appeals his convictions of robbery, attempted robbery, and first degree unlawful possession of a firearm. We conclude that this second prosecution for unlawful possession of a .45 caliber handgun violates his right to be free of double jeopardy and reverse his conviction on that count. We find no other reversible error, nor does Mr. Mata raise any viable issue in his pro se statement of additional grounds. We reverse his conviction of unlawful possession of a firearm and remand for resentencing.

## FACTS AND PROCEDURAL BACKGROUND

¶2  On July 28, 2009, roughly six weeks after his release from custody on other charges, Joe Mata embarked on a one-day, multicounty crime spree. He was charged with crimes in Yakima and Pierce Counties. The Yakima County

charges and convictions are the subject matter of this appeal.

¶3 The crimes allegedly began with Mr. Mata's early morning theft, in Yakima, of a 1993 Dodge Caravan belonging to Luz Garcia, bearing the license plate 864-ROW. Midmorning, the manager of a restaurant in Union Gap reported to the county sheriff that a man and woman had left his restaurant without paying. Responding officers were told that the couple left in what a witness described as a Ford Aerostar van, license plate 664-ROD. At 10:40 a.m., a Yakima County sheriff's deputy responded to a robbery not far from the restaurant, reported by Zachary Sisneros. Mr. Sisneros had been working, delivering bottled water, when a maroon Dodge Caravan with the license plate 860-ROW blocked his truck in the driveway of a residence on his route. The driver of the van robbed him at gunpoint, taking his money, his wallet, and his cell phone. Mr. Sisneros's description of the robber was similar to the description of the man who had left the restaurant without paying. Mr. Sisneros believed the gun was a .40 or .45 caliber semiautomatic pistol.

¶4 At around 6:30 p.m., another armed robbery was reported by Shaun Kroeger and Jacob McDonald. They had been shopping for groceries in Yakima and were returning to Mr. McDonald's pickup truck when a man confronted Mr. Kroeger as he was getting into the truck, demanding "everything you got." Report of Proceedings (RP) (Oct. 17, 2011) at 541. The man flashed a gun and threatened to kill Mr. Kroeger if he did not hand over his wallet; Mr. Kroeger complied. As he did, Mr. McDonald, who had gotten out of the truck to see what was going on, saw Mr. Kroger hand over his wallet and saw a gun in the robber's hand, pointed to the ground. The robber demanded Mr. McDonald's money as well, but Mr. McDonald refused and walked away. After the robber ran off, the two men called the police and reported the incident, describing the robber's vehicle as a red van with the license plate 864-ROW. Mr. Kroeger's

description of the man who robbed him was similar to Mr. Sisneros's description of the robber who confronted him earlier in the day.

¶5 Later that night, at 11:15 p.m., Deputy Robert Glen Carpenter of the Pierce County Sheriff's Office was running routine license plate checks of traffic leaving State Route 512. He ran a plate on a maroon van with license plate 864-ROW and received an NCIC[1] hit stating the vehicle was stolen and the subjects should be considered armed and dangerous.

¶6 Deputy Carpenter caught up with the van, which was being driven by Mr. Mata, with Christina Barrientes a passenger. As Deputy Carpenter and officers in another patrol car activated their lights, Mr. Mata ran a red light and sped away, and a high-speed chase ensued. It ended when Mr. Mata crashed through a fence on a dead-end road, got out of the van, and ran. Deputy Carpenter captured and arrested Mr. Mata with the help of employees in a building in which Mr. Mata attempted to hide.

¶7 A later search of the van led to the discovery of a loaded .45 caliber handgun, found on the driver's side floorboard. Also found were two wallets, one belonging to Mr. Kroeger; Mr. Sisneros's cell phone; and ignition parts along with a screwdriver.

¶8 A records check conducted on the .45 caliber handgun recovered revealed that it had been purchased by Ms. Barrientes on June 5 in Yakima. She picked it up on June 16, at a time when Mr. Mata was in jail for a community custody violation. During the Yakima trial, the State played an audio recording of a telephone call made to Ms. Barrientes by Mr. Mata on June 15, from the county jail, in which he spoke to Ms. Barrientes about purchasing a gun.

¶9 Mr. Mata was charged with crimes in both Pierce and Yakima Counties and was tried first in Pierce County. Mr.

---

[1] National Crime Information Center.

Mata was prohibited from owning or possessing a firearm in light of his prior conviction of a serious offense, and one of the charges prosecuted in Pierce County was first degree unlawful possession of the .45 caliber handgun found in the Dodge Caravan. The Pierce County jury found him not guilty of that crime.

¶10 In Yakima County, the State filed its first information against Mr. Mata on July 31, 2009, charging him with the following counts and enhancements:

Count 1: First degree robbery of Zack Sisneros, alleging that "in the commission of or immediate flight therefrom, you displayed what appeared to be a firearm or other deadly weapon." Clerk's Papers (CP) at 1.

Firearm enhancement.

Count 2: First degree unlawful possession of a firearm.

¶11 By amended information filed August 8, 2011, the State added additional charges and modified the manner in which it charged Mr. Mata with having displayed or used weapons, as follows:

Count 1: First degree robbery of Zack Sisneros, alleging that "in the commission of or immediate flight therefrom, you were armed with a firearm and/or you displayed what appeared to be a firearm or other deadly weapon." CP at 26.

Firearm enhancement.

Counts 2 and 3: First degree robbery of Shaun Kroeger (count 2) and Jake McDonald (count 3), with allegations of firearm or deadly weapon display or use identical to the allegation in Count One.

Firearm enhancement as to each.

Count 4: First degree unlawful possession of a firearm.

Plus rapid recidivism enhancement under RCW 9.94A.535(3)(t).

Plus exceptional sentence to adjust for "free crimes" under RCW 9.94A.535(2)(c).

¶12 By a second amended information filed on October 10, 2011, the day of the pretrial conference in Mr. Mata's Yakima County trial, the State further modified the charges. The prosecutor explained that the State was amending count 3 to attempted first degree robbery, since Mr. Mata demanded Mr. McDonald's wallet but never took property from Mr. McDonald's person. The prosecutor also told the court that the third amended information "cleans up some of the language" to exclude the reference to displaying a deadly weapon. RP (Oct. 10, 2011) at 3. The amendment did more; it also (inadvertently, it appears) eliminated the alternative of Mr. Mata's having been "armed with" a firearm, alleging, in connection with counts 1, 2, and 3, only that

in the commission of or immediate flight therefrom, you displayed what appeared to be a firearm.

CP at 32-33.

¶13 Trial began on October 12. On October 20, the State rested its case. It then asked to amend the information a third time. It explained that the robbery counts should have alleged that Mr. Mata was armed with a firearm "and/or" displayed what appeared to be a firearm or other deadly weapon. RP (Oct. 20, 2011) at 813. Mr. Mata objected. The trial court ultimately ruled that it would allow the amended information if it excluded the "or other deadly weapon" language. *Id.* at 819.

¶14 The third amended information therefore modified the manner in which it charged Mr. Mata with having displayed or used weapons by restoring the alternative of being armed, alleging in each of counts 1, 2, and 3 that

in the commission of or immediate flight therefrom, you were armed with a firearm and/or you displayed what appeared to be a firearm.

CP at 93-94.

¶15 During trial, Mr. Mata asked the trial court to dismiss the unlawful possession of a firearm count, arguing that he could not be convicted of unlawfully possessing the same firearm that the Pierce County jury had acquitted him of possessing on the date in question. The trial court recognized it as a viable issue and one "wisely brought up by the defense," but concluded that there was a sufficient geographic and temporal gap between possession of the .45 caliber handgun in Yakima and Pierce Counties and denied the motion. RP (Oct. 20, 2011) at 806-07.

¶16 The jury found Mr. Mata guilty of the first degree robberies of Mr. Sisneros and Mr. Kroeger and unlawful possession of a firearm. It answered yes to the special verdict forms addressing the firearm and rapid recidivism aggravators.

¶17 The trial court imposed an exceptional sentence based on the jury's findings and on its own finding that Mr. Mata committed multiple current offenses, and his high offender score that resulted in some of the current offenses going unpunished. At the State's request, which was based on RCW 9.94A.589(3), the court ordered that the sentence for the Yakima County crimes run consecutive to Mr. Mata's Pierce County sentence.

¶18 Mr. Mata appeals.

## ANALYSIS

¶19 Mr. Mata makes four assignments of error:[2] (1) that his conviction of first degree unlawful possession of a firearm violates his constitutional right of protection

---

[2] He abandoned a fifth assignment of error, challenging his offender score.

against double jeopardy, (2) that the trial court violated CrR 2.1(d) and his constitutional right to notice of the charges against him in allowing the State to file the third amended information after resting its case in chief, (3) that the trial court erred in ordering that the sentences for his Yakima County convictions run consecutive with his Pierce County conviction, and (4) that the "free crimes" aggravator may not be warranted depending on the outcome of other issues on appeal. We address the assignments of error in turn.

## Double Jeopardy

¶20 Mr. Mata first contends that his prosecution in Yakima County for unlawful possession of the firearm discovered in the van in Pierce County violated his right to be free of double jeopardy.

¶21 The Fifth Amendment and the Washington State Constitution provide that no person shall be twice put in jeopardy for the same offense. U.S. CONST. amend. V; WASH. CONST. art. I, § 9. Both constitutional guaranties include protection from being prosecuted a second time for the same offense after acquittal. *State v. Linton*, 156 Wn.2d 777, 783, 132 P.3d 127 (2006).

¶22 The determination of whether or not a defendant faces multiple convictions for the same crime depends on the unit of prosecution. *State v. Hall*, 168 Wn.2d 726, 730, 230 P.3d 1048 (2010) (citing *State v. Westling*, 145 Wn.2d 607, 610, 40 P.3d 669 (2002)). "The unit of prosecution for a crime may be an act or a course of conduct." *State v. Tvedt*, 153 Wn.2d 705, 710, 107 P.3d 728 (2005) (citing *United States v. Universal C.I.T. Credit Corp.*, 344 U.S. 218, 225-26, 73 S. Ct. 227, 97 L. Ed. 260 (1952)). "The proper question is to determine what act or course of conduct the legislature has defined as the punishable act." *State v. Varnell*, 162 Wn.2d 165, 168, 170 P.3d 24 (2007). The statutory unit of prosecution is a question of law that we review de novo. *State v. Ose*, 156 Wn.2d 140, 144, 124 P.3d 635 (2005).

¶23 The approach to determine the unit of prosecution is well settled:

> [T]he first step is to analyze the statute in question. Next, we review the statute's history. Finally, we perform a factual analysis as to the unit of prosecution because even where the legislature has expressed its view on the unit of prosecution, the facts in a particular case may reveal more than one "unit of prosecution" is present.

*Varnell*, 162 Wn.2d at 168 (citing *State v. Bobic*, 140 Wn.2d 250, 263-66, 996 P.2d 610 (2000)). If the statute is ambiguous as to the unit of prosecution, the rule of lenity applies and the ambiguity must be " 'resolved against turning a single transaction into multiple offenses.' " *Tvedt*, 153 Wn.2d at 711 (internal quotation marks omitted) (quoting *State v. Adel*, 136 Wn.2d 629, 635, 965 P.2d 1072 (1998)).

¶24 Mr. Mata was charged in both Pierce and Yakima Counties under RCW 9.41.040(1)(a), which defines the crime of first degree unlawful possession of a handgun as follows:

> A person, whether an adult or juvenile, is guilty of the crime of unlawful possession of a firearm in the first degree, if the person owns, has in his or her possession, or has in his or her control any firearm after having previously been convicted . . . in this state or elsewhere of any serious offense as defined in this chapter.

The charges in both counties were based on his possession on July 28, 2009 of the .45 caliber handgun found on the floorboard of the Dodge Caravan.

¶25 We first analyze the statute. Subsection (1)(a) makes it a crime for a person convicted of a serious offense to own or have possession of "any" firearm, without tying the commission of the crime to a particular duration of ownership or possession or to the location of the firearm. Subsection (7) of the statute provides, "Each firearm unlawfully possessed under this section shall be a separate offense." RCW 9.41.040. Each firearm therefore constitutes

a separate unit of prosecution. *In re Pers. Restraint of Shale*, 160 Wn.2d 489, 500, 158 P.3d 588 (2007).

¶26 Neither the parties nor we have identified any legislative history that would suggest that the unit of prosecution is anything other than the particular firearm.

¶27 The State's position that there might be separate "possessions" of the same firearm that support separate charges under the statute implicates the third, factual step of the analysis, in which we determine whether, despite the legislative focus, the facts reveal that more than one "unit of prosecution" is present. The possibility of multiple "possessions" of the same firearm finds support in *State v. Kenyon*, 150 Wn. App. 826, 208 P.3d 1291 (2009), in which Division Two of this court considered the character of the crime of unlawful possession of a firearm in a different context: a defendant's argument that a second prosecution for his unlawful possession of a firearm in 2004 should have been dismissed under CrR 4.3.1 because it was "related" within the meaning of the rule to an earlier prosecution for possessing the same firearm in 2005.

¶28 In *Kenyon*, the material facts were summarized in findings by the trial court that were treated as verities on appeal:

> "In this particular case, although the same firearm, identified by its serial number, was possessed on one occasion and allegedly possessed in this case on another occasion, those two time periods are eight months apart. They have intervening time where Mr. Kenyon was incarcerated both in jail and in prison. Certainly this could not be said to be a single criminal incident or episode.
>
> "The allegation is that Mr. Kenyon possessed this firearm, divested himself of it by throwing it out the window, and then at a later time regained it and possessed it again. The Court finds that this is not a situation where the facts amount to a related offense, because it is not a single criminal incident or episode."

150 Wn. App. at 833.

¶29 Division Two concluded that the trial court erred in failing to dismiss the second prosecution and in the process made two observations that are relevant to the issue presented here and with which we agree. First, it stated that "[t]he act upon which these two charges rest—ownership, possession, or control of a single firearm—is a 'course of conduct' rather than a discrete act because that behavior takes place over a period of time rather than at one distinct moment." *Id.* at 834. At the same time, it regarded the two instances of possession as different offenses when it stated that they "were related and, as such, *should have been charged at the same time.*" *Id.* (emphasis added). Implicitly, the court accepted the trial court's reasoning that the defendant's act of throwing the firearm out the window and regaining possession of it many months later, following a period of incarceration, resulted in a distinct, separately chargeable course of conduct.

¶30 Other Washington decisions support the concept that a crime that is defined as a course of conduct can, depending on the facts, be interrupted and committed anew. In *Hall*, the Supreme Court found that a criminal defendant's hundreds of calls to a witness in an effort to dissuade her from testifying constituted a single witness tampering offense, concluding that the witness tampering statute criminalizes the "ongoing" attempt to persuade a witness not to testify. 168 Wn.2d at 733. It stated in dicta that "[o]ur determination might be different if Hall had changed his strategy . . . or if he had been stopped by the State briefly and found a way to resume his witness tampering campaign." *Id.* at 737.

¶31 In *State v. Chouap*, 170 Wn. App. 114, 125, 285 P.3d 138 (2012), Division Two, citing this dicta in *Hall*, found the crime of attempting to elude a pursuing police vehicle to be one that a defendant could "commit[ ] . . . anew with each pursuit." In *Chouap*, the defendant had attempted to elude law enforcement in two high speed chases: one in Tacoma, involving Tacoma police, and another in Lakewood, involv-

ing Lakewood police. The court found two pursuits and two offenses where "[t]he first pursuit ended when the Tacoma police officers stopped pursuing Chouap because of his dangerous driving" and he had thereby "successfully eluded the pursuing police vehicle." *Id.*

¶32 We conclude, as did Division Two in *Kenyon*, that the crime of unlawful possession of a firearm is a "course of conduct" rather than a discrete act. We agree that an interruption in possession of a particular firearm may result in different "possessions" just as the interruption of the defendant's effort to elude in *Chouap* resulted in different "pursuits." We need not decide in this case what the duration or character of the interruption would have to be in order to give rise to distinct, separately chargeable unlawful "possessions" of a firearm, however, because the State offered no evidence that Mr. Mata's possession of the .45 caliber handgun on July 28 (at times actual; at others, constructive) was ever interrupted.

■ ¶33 "[W]hen a statute defines a crime as a course of conduct over a period of time, 'then it is a continuous offense and any conviction or acquittal based on a portion of that course of action will bar prosecution on the remainder.'" *State v. McReynolds*, 117 Wn. App. 309, 339, 71 P.3d 663 (2003) (quoting *Harrell v. Israel*, 478 F. Supp. 752, 754-55 (E.D. Wis. 1979)). Mr. Mata's acquittal of unlawful possession of the .45 caliber handgun based on a portion of his possession of the firearm on July 28 barred prosecution of the remainder. The unlawful possession conviction must be reversed.

¶34 The remainder of this opinion has no precedential value. Therefore, it will be filed for public record in accordance with RCW 2.06.040, the rules governing unpublished opinions.

BROWN, J., and KULIK, J. PRO TEM., concur.

Review denied at 180 Wn.2d 1026 (2014).