IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 82254-3-I |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ROBERT LEE MORRISON, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |
| | ) | |

VERELLEN, J. — Robert Morrison contends he received ineffective assistance of counsel during his trial for first degree kidnapping, among other charges, because defense counsel[1] proposed a lesser included jury instruction for unlawful imprisonment rather than pursuing an "all or nothing" strategy. Because defense counsel's strategic decision to request the lesser included instruction was legitimate under the circumstances, Morrison fails to prove defense counsel's performance was deficient.

Therefore, we affirm.

---

[1] We note that Morrison was represented by two attorneys at trial, but we refer to them in the singular because his argument applies equally to both.

FACTS

Robert Morrison and E.E. began dating in June of 2016. They were together until February of 2020 when E.E. obtained a no-contact order against him. Despite the no-contact order, they began dating again that April.

On June 13, 2020, they rented a hotel room in Lynnwood. They opened a bottle of whiskey. E.E. got drunk, and they began arguing. She became aggressive, throwing objects around the room, and hitting, pushing, and strangling Morrison. To calm her down, Morrison promised he would get her some methamphetamine from his house in Marysville, and he drove them there.

Morrison went inside, and E.E. climbed into the back seat of the car, which had tinted windows, to prepare to smoke. He returned without any methamphetamine. According to Morrison, E.E. had a knife as part of her drug paraphernalia. He said she attacked when he returned without drugs, and he took the knife and stabbed her while defending himself. According to E.E., Morrison came out of his house with two knives and began stabbing her without provocation. Morrison ended up cutting or stabbing E.E. five times. She suffered a long wound on her left cheek, two wounds in her left arm, and a deep stab wound to her left hand. She was also stabbed once in the left side of her chest, which resulted in a pneumothorax.[2] After a neighbor came out to check on the sounds of screaming, Morrison drove away after he engaged the window locks and the child locks.

_____

[2] A pneumothorax is air between the lungs and inner chest wall that can cause compression of the lungs and, if it grows large enough, death. Report of Proceedings (RP) (Nov. 12, 2020) at 130-31.

2

E.E. repeatedly asked Morrison to take her to a hospital, but he initially refused because he was afraid of being punished for violating the no-contact order. Morrison testified at trial and admitted "I didn't want her out of the car. It was to my advantage that she stay in the car."[3] He explained he locked her in the backseat "to keep her from getting out" because "I needed to talk to her" and thought she might try to jump out of the car while he was driving.[4] They ended up driving around for more than two hours before Morrison finally took E.E. to the emergency room at Swedish Hospital in Edmonds. He let her out only after she promised to not tell what happened. E.E. was hospitalized for three days.

Morrison was charged with first degree assault with a deadly weapon, first degree kidnapping, and violation of the no-contact order, all with domestic violence enhancements. Pretrial, defense counsel notified the State it might request a lesser-included instruction for unlawful imprisonment. During trial, both E.E. and Morrison testified. Morrison's theory of the case was that he stabbed E.E. in self-defense, he did not intend for her to be seriously injured, and he did not kidnap her because she agreed to be driven around. Defense counsel requested jury instructions for self-defense and for unlawful imprisonment, which the State did not oppose.

The jury found Morrison not guilty of assault and kidnapping, but it found him guilty of unlawful imprisonment and of violating the no-contact order. Morrison was sentenced to eight months' incarceration for the unlawful imprisonment conviction.

---

[3] RP (Nov. 16, 2020) at 304.

[4] Id. at 305, 309.

3

The court imposed a 364-day sentence for violating the no-contact order and suspended it for five years, requiring that Morrison have no contact with E.E. during that time.

Morrison appeals.

ANALYSIS

Morrison argues he received ineffective assistance of counsel because defense counsel proposed the unlawful imprisonment jury instruction.

We review claims of ineffective assistance of counsel de novo.[5] To prevail, Morrison must prove that defense counsel's performance was deficient and that without the deficient performance the result, by a reasonable probability, would have been different.[6] Morrison's claim fails unless both are proven.[7]

When considering a claim of ineffective assistance, we presume defense counsel's performance was not deficient.[8] To overcome this presumption, Morrison "must establish an absence of any legitimate trial tactic that would explain counsel's performance."[9] "When counsel's conduct can be characterized as legitimate trial

---

[5] Matter of Lui, 188 Wn.2d 525, 538, 397 P.3d 90 (2017) (citing State v. Sutherby, 165 Wn.2d 870, 883, 204 P.3d 916 (2009)).

[6] Id. (citing Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)).

[7] In re Pers. Restraint of Crace, 174 Wn.2d 835, 847, 280 P.3d 1102 (2012) (citing Strickland, 466 U.S. at 697).

[8] Lui, 188 Wn.2d at 539 (citing State v. Grier, 171 Wn.2d 17, 33, 246 P.3d 1260 (2011)).

[9] Id. (citing Grier, 171 Wn.2d at 33).

strategy or tactics, performance is not deficient."[10]  "'A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.'"[11]

Morrison contends the only legitimate trial strategy was an "all or nothing" strategy, so defense counsel's decision to request a lesser-included instruction was "unreasonable" because he "had no defense to this charge."[12]  But Morrison does not account for the seriousness of the charges he was facing, and we review defense counsel's decision in view of the uncertainty about whether Morrison would be found guilty of first degree kidnapping.[13]

First degree kidnapping is a class A felony with a seriousness level of 10,[14] and it is punishable by a maximum term of life imprisonment.[15]  If convicted of only first degree kidnapping and with an offender score of 1,[16] Morrison would have faced a standard range sentence of between 57 and 75 months.[17]  Unlawful imprisonment, by contrast, is a class C felony with a seriousness level of 3 and is punishable by a

---

[10] State v. Kyllo, 166 Wn.2d 856, 863, 215 P.3d 177 (2009) (citing State v. Hendrickson, 129 Wn.2d 61, 77-78, 917 P.2d 563 (1996)).

[11] Grier, 171 Wn.2d at 34 (quoting Strickland, 466 U.S. at 689).

[12] Appellant's Br. at 17.

[13] Grier, 171 Wn.2d at 34 (quoting Strickland, 466 U.S. at 689).

[14] RCW 9A.40.020(2); RCW 9.94A.515.

[15] RCW 9A.20.021(1)(a).

[16] The court calculated Morrison's offender score as 1.  CP at 25.

[17] RCW 9.94A.510.

maximum of five years' imprisonment.[18]  With an offender score of 1, Morrison faced

a standard range of three to eight months incarceration if convicted of only unlawful

imprisonment.[19]  Considering the disparity between the possible sentences, defense

counsel's decision was clearly strategic.[20]  The remaining question is whether it was

reasonable under the circumstances.[21]

Defense counsel requested the lesser included instruction after both sides

rested.  On the evidence presented, the jury could have found Morrison guilty of first

degree kidnapping.  To convict Morrison, the State needed to prove

> (1) That . . . [Morrison] intentionally abducted [E.E.],
>
> (2) That [Morrison] abducted [E.E.] with intent
>
> (a) to facilitate the commission of Assault in the 1st Degree or the flight therefrom, or
>
> (b) to inflict bodily injury on [E.E.]; and
>
> (3) That any of these acts occurred in the [s]tate of Washington.[22]

"Abduct" was defined as "to restrain a person by either secreting or holding the

person in a place where that person is not likely to be found or using or threatening to

use deadly force."[23]  "Restrain" was defined as "to restrict another person's

---

[18] RCW 9A.40.040(2); RCW 9.94A.515; RCW 9A.20.021(1)(c).

[19] RCW 9.94A.510.

[20] See State v. Chouap, 170 Wn. App. 114, 134, 285 P.3d 138 (2012) ("Whether to request a lesser included offense instruction is a tactical decision.") (citing Grier, 171 Wn.2d at 39).

[21] Grier, 171 Wn.2d at 34 (quoting Strickland, 466 U.S. at 689).

[22] CP at 67.

[23] CP at 68.

movement without consent and without legal authority in a manner that interferes substantially with that person's liberty."[24]

Morrison admitted he intentionally locked E.E. in the backseat of a car he was driving, and she testified that Morrison threatened to kill her and to kill her children after she asked to be taken to a hospital. E.E. testified she believed his threats and initially lied to hospital staff about how she was injured because she was afraid Morrison would kill her or her children. The jury could have concluded Morrison intentionally and substantially interfered with E.E.'s liberty by restricting her movement without consent and without authority either by threatening to use deadly force against her and her children or by locking her in the car and driving around after she asked to be released. Defense counsel faced evidence sufficient to establish the first element of first degree kidnapping.

E.E. also testified that Morrison refused to let her out of the car to get medical care unless she promised to lie about his involvement by saying she was mugged while walking on Highway 99. Morrison himself admitted he kept E.E. locked in the car and refused to take her to the hospital "because I would be in trouble."[25] The jury could have concluded Morrison abducted E.E. to help him escape the consequences from stabbing her. It was undisputed this occurred in Washington. Thus, defense counsel faced evidence sufficient to establish the remaining elements of first degree kidnapping.

---

[24] Id.

[25] RP (Nov. 16, 2020) at 293.

An "all or nothing" defense strategy is sometimes viable, but Morrison is incorrect that here it was the only legitimate strategy. Considering this evidence from defense counsel's perspective during trial, it was a legitimate strategic decision to give the jury an option to convict Morrison of a lesser crime and reduce the risk of a far more severe sentence.[26] Because defense counsel made a legitimate strategic decision to avoid a much more severe sentence, Morrison fails to show he received ineffective assistance.[27]

Therefore, we affirm.

_____

WE CONCUR:

_____    _____

---

[26] See Singleton v. Lockhart, 871 F.2d 1395, 1400 (8th Cir. 1989) (concluding defense counsel made a reasonable tactical decision when "[i]n light of the potential penalty Singleton faced, gambling on an all-or-nothing defense could well have been less reasonable than arguing a fallback position in addition to a claim of total innocence.").

[27] Kyllo, 166 Wn.2d at 863 (citing Hendrickson, 129 Wn.2d at 77-78).