[No. 26155. Department One. September 22, 1936.]

THEODORE KESELEFF, *Respondent,* v. SUNSET HIGHWAY
MOTOR FREIGHT COMPANY *et al., Appellants.*

MINNIE GOLDBERG, *as Administratrix, Respondent,* v.
SUNSET HIGHWAY MOTOR FREIGHT COMPANY
*et al., Appellants.*[1]

[1]Reported in 60 P. (2d) 720.

*J. Speed Smith* and *Henry Elliott, Jr.,* for appellants.

*Preston, Thorgrimson & Turner* and *Bogle, Bogle & Gates,* for respondents.

GERAGHTY, J.—We have here, consolidated for purposes of trial and appeal, two actions growing out of a head-on collision between two trucks on the Sunset highway within the limits of the town of Snoqualmie. One of the trucks was a heavy Fageol with trailer attached, operated by the Sunset Highway Motor Freight Company and driven by its employee, William Sherman. The other was a light Chevrolet, owned and driven at the time by Hyman Goldberg, who was accompanied in the cab by an employee, respondent Theodore Keseleff. The Fageol truck was thirty-five feet long and the trailer about the same length. The trucks will hereafter be referred to respectively as the Sunset and the Goldberg. The collision occurred about 9:30 p. m. on October 23, 1934. The night was dark and the weather cloudy and rainy.

The Sunset truck was being driven easterly in the direction of Yakima and the Goldberg truck westerly toward Seattle. The paved highway, where the accident occurred, was twenty feet in width, with a four-foot graveled shoulder on the south side and beyond this a grass and earth embankment.

Goldberg was so seriously injured that he died shortly after the accident. Keseleff suffered severe injuries.

The respondent Minnie Goldberg, as administratrix of her husband's estate, brought action to recover for his death, as well as for property damage resulting from the destruction of the truck. Keseleff brought action for the personal injuries sustained by him. In the action brought by the administratrix, the appellant Aetna Casualty & Surety Company, hereafter referred to as the insurance company, was made party defendant upon the allegation that it had issued to appellant Sunset Highway Motor Freight Company a liability and property damage insurance policy. The insurance company was not originally named as a party in the Keseleff action, but when the cases were consolidated for trial, it was stipulated that the complaint in the latter case be deemed amended in this respect, with the right reserved to appellants to challenge the joinder of the insurance company. Later, the trial court overruled the appellants' objection to the inclusion of the insurance company as party defendant in the actions. After trial to a jury, verdicts were returned in favor of the respondents.

The appellants seasonably made motions for nonsuit, dismissal, judgments notwithstanding the verdicts, and new trials, all of which were denied, and judgments entered upon the verdicts.

The assignments of error made by the appellants may be considered under three heads: First, the con-

tention that the insurance company was not a proper party defendant; second, the insufficiency of the evidence to make a case for submission to the jury; and third, errors for which it is contended new trials should have been granted.

■ Considering, first, the joinder of the insurance company, the complaint in the Goldberg case, which in this respect was adopted in the Keseleff case and admitted by the appellants, alleged that the insurance company did

" . . . issue to said defendant and file with said Department of Public Works of Washington, its liability and property damage insurance policy No. 49J408 in the amount of $5,000 for injury to one person, $10,000 for one accident and $1,000 for damage to property, all as required by law and the rules and regulations of said Department of Public Works of Washington, which said policy was in full force and effect during the month of October, 1934."

Except for its reference to the law and rules and regulations of the department of public works, this allegation would imply no more than the execution of the ordinary liability policy by the insurance company, which would establish only a derivative right in the injured party, arising out of a judgment in favor of the insured. The allegation would negative any right in the injured party to include the insurance company as party defendant in his action against the insured.

If reference is had to the governing statute, it will not aid respondents. Section 15 of chapter 166, Laws of 1933, p. 620, as amended by § 7 of chapter 55, Laws of 1933, Ex. Ses., p. 146, reads as follows:

"The department shall, in the granting of permits to for hire carriers under this act, require such for hire carriers to first procure and file liability and property damage insurance from a company licensed to write such insurance in the State of Washington *for such*

*limits of liability, and upon such terms and conditions* as the department shall determine to be necessary for the reasonable protection of the public against damage and injury for which such carrier may be liable by reason of the operation of any motor vehicle." (Italics ours.) Rem. 1934 Sup., § 6381-15.

It will be seen that the details of the liability policies required by this section are to be fixed by the department of public works.

Section 2 of Chapter 55, Laws of 1933, Ex. Ses., p. 141, also, provides:

"The department shall have power and authority, by general order or otherwise, to prescribe rules and regulations in conformity with this act, applicable to any and all such certified freight carriers; and within such limits shall have power and authority to make orders and to prescribe rules and regulations affecting certified freight carriers." Rem. 1934 Sup., § 6381-1½.

Pursuant to this authority, the department of public works, on February 2, 1934, issued general order M. V. No. 48, establishing and prescribing

"Rules and Regulations governing motor freight carriers operating under Certificates of Public Convenience and Necessity and Contract Hauler and For Hire Carrier Permits, as provided in Chapter 166, of the Laws of 1933, as amended by Chapter 55 of the Laws of the Extraordinary Session of 1933."

After the certification and publication of these rules and regulations, they were printed by the public printer for general use. Rule 35 embodied in these rules and regulations is as follows:

"All insurance policies filed covering liability and property damage shall carry the following form of endorsement:

"ENDORSEMENT

"The policy to which this endorsement is attached is written in pursuance of, and is to be construed in accordance with Chapter 166, Laws of 1933, as amended

by Chapter 55, Laws of the Extraordinary Session of 1933 of the State of Washington, and acts amendatory thereof, and supplemental thereto, and the rules and regulations of the Department of Public Works of Washington adopted thereunder. The policy is to be filed with the State in accordance with said statute.

"In consideration of the premium stated in the policy to which this endorsement is attached, the Company agrees to pay any final judgment for personal injury, including death resulting therefrom, and/or damage to property (excluding cargo) of any person or persons other than the assured, caused by any and all motor vehicles (as defined by Section 1(c) of Chapter 166, Laws of 1933, State of Washington, as amended) operated by the assured pursuant to a certificate or a permit issued by the Department of Public Works of Washington in accordance with said above named chapters, and acts amendatory thereof and supplemental thereto, within the limits set forth in the following schedule of insurance; and further agrees that upon its failure to pay any such final judgment, such judgment creditor may maintain an action in any court of competent jurisdiction to compel such payment. Nothing contained in the policy or any endorsement thereon, nor the violation of any of the provisions thereof by the assured may relieve the Company from liability hereunder or from the payment of such judgment."

The policy is not attached to the complaint, nor is it contained in the record, but since the complaint alleged its effective date as July 18, 1934, and that it was executed and delivered as required by law and the rules and regulations of the department of public works, it is to be presumed that it bore the endorsement required by rule 35, then in force. By this endorsement, the insurer agrees that it will pay any final judgment for personal injury or damage to property recovered against the insured; and that, upon its failure to pay such judgment, the judgment creditor may maintain an action in any court of competent jurisdiction to compel payment. This endorsement clearly

implies that the liability of the insurance company is dependent upon the recovery of a judgment against the insured by the injured party. When a judgment so recovered remains unpaid, then the right of the injured party, the judgment creditor, to sue the insurer becomes fixed.

While the complaint alleged the delivery of the policy by the insurance company as required by law and the rules and regulations of the department of public works, a copy of the rules and regulations was not introduced at the trial, and it is contended by the respondents that the court cannot take judicial notice of them on appeal. We think this position of the respondents is not well taken, because the allegations of the complaint invited an inspection of the rules, as well as the statute, in order to ascertain the terms of the policy. The respondents would not be helped by the court's closing its eyes to the rules, because the allegation of the complaint would not, in that event, be sufficient of itself to bring this case within the rule of *DeVoto v. United Auto Transportation Co.*, 128 Wash. 604, 223 Pac. 1050, invoked by the respondents.

Respondents will admit, of course, that we may refer to the statute, although not specifically cited. When we turn to the statute, we are there directed to the rules and regulations of the department for the ascertainment of the definite terms and obligations of the policy. We are of the opinion that the trial court erred in permitting the inclusion of the insurance company as defendant in the two actions.

Our conclusion on this point requires that the cases be remanded for new trials, unless, as the appellants contend in their second group of assignments, there was not sufficient evidence to take the case to the jury.

The appellants called several witnesses who testified to the position of the trucks after the wreck

—that they were on the appellants' side of the highway—and other witnesses who testified that, before the accident, the Sunset truck was on its own side of the highway. But the issue raised by the assignments is to be determined by a consideration of the *prima facie* case made by the respondents. In weighing the respondents' case, we are, of course, governed by the recognized rule that, on a challenge to the sufficiency of the evidence, the court must assume the truth of plaintiffs' evidence, as well as all reasonable inferences therefrom.

Respondent Keseleff testified that his attention was called to the imminent danger of collision when Goldberg, the driver, moved in his seat and started to get up. He saw the lights of a car headed directly for the Goldberg truck, some fifty-five to sixty-five feet ahead. Goldberg was driving

" . . . maybe one and one-half, maybe two and one-half feet to the edge of the pavement, to the right, no more. And at that time I see he drive normal."

Further testifying, Keseleff identified, upon a map introduced in evidence, the position of the Goldberg truck at the time of impact as being on the right-hand, Goldberg's, side of the yellow strip marking the center of the highway. While there was testimony, and possibly physical evidence, which would warrant the jury in not taking Keseleff's testimony at face value, yet they could, and evidently did, believe him.

Another witness for the respondents, Mrs. Nolan, who arrived at the scene shortly after the accident and later took Keseleff in her automobile to a hospital, testified that, while the Sunset truck was off the paved highway and across the four-foot graveled shoulder onto the earth embankment, the rear wheels of the trailer were on the pavement, and the left rear wheel

was across the center of the highway and on the left, Goldberg's side.

While often the position of a vehicle after collision is of questionable value in determining its position before, the position of the rear of the trailer here might well have some probative value, since the force of the head-on collision would be somewhat spent before reaching the rear of the trailer.

It is true that the testimony of Mrs. Nolan, who was a disinterested witness, was contradicted by other disinterested witnesses, but the jury could believe her testimony and, coupling that with the testimony of respondent Keseleff, reach the conclusion that, at the time of impact, the Sunset truck was partly on respondents' side of the highway. Taking respondents' testimony at its weakest, there was more than a scintilla of evidence to sustain their case. While respondent Keseleff did not testify to the position on the highway of the Sunset truck before the impact, the reasonable inference, of course, is that, if the Goldberg truck was struck while on its own side of the highway, the collision could have happened only because the Sunset truck had crossed the center line onto respondents' side. The trial court did not err in denying appellants' motions and submitting the cases to the jury.

Since the cases must be returned for retrial for misjoinder of parties, we need refer only to such of the errors assigned as grounds for new trials as may have a bearing upon retrial. With one exception, these errors relate to instructions given by the court or requested by appellants and denied.

■ Appellants devote much space to a criticism of instruction No. 1 and related and dependent instructions Nos. 3¾ and 13½. As instruction No. 1 is not printed in the brief as required by Rule of Court VIII (2), 159 Wash. xliii, we cannot consider it, nor the re-

lated instructions.  *Lund v. Seattle,* 163 Wash. 254, 1 P. (2d) 301.

█ Objection is made to instructions Nos. 9½ and 12, which are in general language, applicable as well to the operation of the Goldberg truck as the Sunset. They called the jury's attention to the general duty of keeping a proper and adequate lookout and driving in a careful and prudent manner.  Since, by their terms, the instructions were not directed to any specific act of the appellants, but, rather, enunciated abstract rules, as obvious to the jury as to the court, we cannot believe that they worked any prejudice to the appellants.

█ The appellants excepted to instruction No. 15, contending that it left to the jury to decide, in the face of positive evidence that the lights were dimmed, whether the driver of the Sunset truck dimmed his lights before the collision.  There was testimony that the driver of the Sunset truck dimmed his lights for over two blocks before the point of collision.  However, glaring lights were brought into the case by Keseleff's testimony that the lights were "bad and branching out in every direction."

Instruction No. 16, to which appellants object, is not set out in the brief and cannot be considered.

Appellants' criticism of instruction No. 17½ as being a comment by the court upon the facts is without merit.

█ Numerous instructions were requested by the appellants and denied by the court.  We do not feel that the assignments based upon the court's refusal to give these instructions require any detailed discussion, since there was a failure to state to the court any exception other than the general one that the requested instructions were correct statements of the law.  It has been held that such exceptions are too general.  *Drain-*

*age Dist. No. 2 v. Everett,* 171 Wash. 471, 18 P. (2d) 53, 88 A. L. R. 123.

■ The appellants' objection to the introduction in evidence of a photograph of respondent Keseleff, lying in bed in a hospital in Seattle, needs only a passing reference, since this court is committed to the view that the admission of photographs in evidence in all proper cases should be encouraged. The propriety of their use is largely in the discretion of the trial court, which will rarely permit an abuse. There was none here.

The judgments are reversed, and remanded with direction to grant new trials and dismiss the Aetna Casualty & Surety Company from the actions as party defendant.

TOLMAN, STEINERT, and MITCHELL, JJ., concur.

MILLARD, C. J., concurs in the result.