[No. 33066. Department Two. August 4, 1955.]

THE STATE OF WASHINGTON, *Respondent*, v. ADAM W.
LYSKOSKI, *Appellant*.[1]

[1]Reported in 287 P. (2d) 114.

104

*Warner, Pierce & Peden,* for appellant.

*Charles O. Carroll, James A. Andersen, Jr.,* and *Murray B. Guterson,* for respondent.

MALLERY, J.—Adam W. Lyskoski, defendant below and appellant here, was convicted on four counts of asking and receiving a bribe to influence his official acts in connection with certain criminals. He was acquitted on six counts, with which, of course, we are not concerned on this appeal.

In the early morning of March 7, 1952, Clyde Edwards, a Tacoma policeman, and Jack Pavlich, Otis Alnutt, and Richard Lindsey burglarized the Inglewood Golf and Country Club, near Seattle. The appellant, chief of detectives in the King county sheriff's office, was in charge of the investigation of the crime.

On November 24, 1952, the Tacoma chief of police interviewed Richard Lindsey in Portland, when it was learned he was in jail there. Lindsey gave a detailed written statement about the Inglewood burglary, a copy of which was given to appellant on December 3, 1952. A Tacoma police captain gave appellant a copy of an additional statement made by Lindsey the next day. Later, in the evening of December 4, 1952, Edwards gave his confession to appellant, and subsequently Pavlich and Alnutt did likewise.

Notwithstanding the fact that Lindsey had "broken the case," appellant made considerable effort with the prosecuting attorney's office and other officials to so arrange matters that Edwards' punishment would be a jail sentence instead of going to the penitentiary. He urged that such a

course was a proper reward to Edwards for having "broken the case." It was the state's theory that the real inducement for appellant's acts in his official capacity, was the bribes paid him by Edwards.

Edwards was released on bail December 24, 1952. Early in January, 1953, he telephoned appellant and arranged an evening meeting at the China Pheasant cafe on highway No. 99, in King county. Edwards testified that, on that occasion, appellant

". . . wanted money now to first postpone my trial and then make arrangements with everyone, and so forth, that he had to do in order to get me county time in jail without going to the penitentiary for the offense that I was charged with."

Late in January, Edwards met appellant two or three times and made payments totaling one thousand dollars. On or about April 13, 1953, he received a call from appellant, and they met in southern King county. On that occasion, appellant said he would need an additional fifteen hundred dollars. Edwards went to his sister-in-law, Mrs. Audrey Edwards, and obtained one thousand dollars from her, consisting of $430 in cash and a $570 check. He cashed the check at the Lincoln branch of the Puget Sound Bank, in Tacoma, then met appellant at the Bow Lake airport, in King county, and paid him the one thousand dollars.

Edwards next met appellant in the lobby of the King county courthouse in mid-May, 1953. They had coffee at the Golden Goose cafe, and appellant told him that he needed more money. Edwards informed appellant he was going to Idaho and Nevada, and would send him two hundred dollars as soon as possible. It was agreed that this money could be sent in the form of United States postal money orders. He later sent appellant two one-hundred-dollar money orders.

On July 31, 1953, Edwards met appellant at the latter's Tacoma home, and appellant said he was in dire need of more money. Edwards went to his employer, Mr. Burt Udeen of the Udeen Construction Company, in Tacoma, and secured a blank note. The following day, at the Bow Lake

airport, he gave appellant eight hundred dollars of his own money, and appellant filled out the blank note for that amount, payable to the Udeen Construction Company upon the sale of appellant's home in Tacoma. The note has never been paid. At the time the money was given to appellant, he told Edwards that, as far as he was concerned, it would certainly help him out on his case.

Appellant's assignment of error to the trial court's refusal to sustain his challenge to the sufficiency of the evidence on the three counts concerning the Edwards' bribes, is without merit.

Alnutt testified he met appellant in January, 1953, on McKinley hill, in Tacoma, and attempted to bribe him, but that appellant told him, "Toby, you can't do that to me." Alnutt then related that he attempted, on several occasions, to see appellant, at the latter's Tacoma home, in order "to get his confidence so I could bribe him, if it was possible." He found him there on a certain Sunday, and, at that time, appellant said he wanted to buy a stove and hot-water tank for his home prior to putting it up for sale. Alnutt convinced appellant he could save fifty dollars on such a purchase, and appellant agreed to let him go ahead, stating he would repay Alnutt when a certain bank loan materialized. Alnutt then went to the Puget Sound Furniture Company, in Tacoma, and paid cash in excess of two hundred fifty dollars for the items. He told the salesman they were for appellant and had them delivered to appellant's address, where they were received and receipted for by a woman. Alnutt has never been repaid, never sought repayment, and never expected repayment.

In March, 1953, appellant telephoned from Seattle and asked Alnutt for a loan of three hundred dollars, and said, "Toby, the bank loan didn't go through, but the house is up for sale and I've got everything ready and as soon as it is sold, then I will repay you for everything." Alnutt met appellant at 38th and east L street in Tacoma, the place agreed upon over the telephone, and gave him three hundred dollars. He asked appellant if there was anything appellant could do for him with regard to his trouble in

King county, and appellant replied, "Well, I won't do you any harm." The three hundred dollars have never been repaid.

Some thirty to sixty days later, appellant telephoned Alnutt in Tacoma, and asked him "if I could let him have five hundred, and I told him yes." No mention of a loan was made. They agreed to meet at the Halfway House, where Alnutt gave him five hundred dollars in tens and twenties. Appellant said he had a couple of presents to buy, and repeated that he would not do Alnutt any harm. In August or September, 1953, Alnutt called appellant, and they agreed to meet at the Halfway House, where Alnutt paid appellant five hundred dollars and requested him to get a trial postponement for Jack Pavlich. Appellant said that he would try to do so.

This evidence is sufficient to take the Alnutt bribery count to the jury and sustain the trial court's denial of appellant's motion to dismiss it.

Appellant assigns as error the misconduct of the deputy prosecuting attorney in relating, in his opening statement to the jury, evidence that would be inadmissible under the hearsay rule.

Upon objections being made, the trial court admonished the deputy prosecutor upon each occasion when this occurred, and instructed the jury to disregard the statements. The trial court denied appellant's motion for a new trial, because it found the deputy prosecutor was acting in good faith.

We agree with the trial court that the deputy prosecutor acted in good faith. He had a written brief in support of his theory of the admissibility of the hearsay evidence in question. It is true he misconstrued the rule in *State v. Wappenstein,* 67 Wash. 502, 121 Pac. 989, but that does not show bad faith.

The trial court has a wide discretion in determining the good faith of a prosecutor in his opening statement to a jury, and did not abuse it in this instance. In *State v. Duncan,* 148 Wash. 57, 268 Pac. 139, we said:

"We have repeatedly held that a statement of a prose-

cutor, not made in bad faith, to which objection is timely made and the jury instructed to disregard it, is not reversible error. See *State v. Edelstein,* 146 Wash. 221, 262 Pac. 622, and cases there cited."

■ Appellant assigns as error the misconduct of the deputy prosecuting attorney in his opening argument to the jury. No objection was made to the argument, and error, therefore, cannot be predicated upon it. *State v. Whetstone,* 30 Wn. (2d) 301, 191 P. (2d) 818; *State v. Lane,* 37 Wn. (2d) 145, 222 P. (2d) 394.

Appellant assigns as error what he contends was misconduct on the part of the trial court, in the following incident:

"MR. ULVESTAD: Oh, yes, I object to the question. THE COURT: I don't intend to sit and listen to an extended argument in every objection you made, Counsel. MR. ULVESTAD: Well, may I not state in making our own record the grounds upon which the objections are made? THE COURT: Yes, but I just don't think it's just quite necessary to make an argument over every ruling the Court makes and over every objection which you make, many of which I do not think are well taken, and within your own knowledge they are not. Now you make whatever statement you want to make for the record. MR. ULVESTAD: Very well. We want to know now— THE COURT: Make your objection. MR. ULVESTAD: At this time comes now the defendant and respectfully takes exceptions to the Court's remarks that some of the objections I made as Counsel for the defense were made on statements which within my own knowledge I knew were not true."

■■ The remarks of the trial court were directed to counsel in ruling upon propositions of law, and were not addressed to the jury. They were not comments on the evidence. See *State v. Rio,* 38 Wn. (2d) 446, 230 P. (2d) 308. Wide disciplinary powers in a trial court are indispensable to a fair and orderly trial. We will not interfere with the trial court's discipline of an attorney unless he is without fault and the disciplinary measures are both prejudicial and unreasonable under the circumstances. The trial court's statement was not error.

After Edwards started collaborating with the prosecuting attorney's office in the instant case, Marvin Stenholm, chief

investigator for the office, rented a miniature battery-powered "Minifon" wire recorder from Electricraft, Inc., and showed Edwards how to operate it with the recorder concealed in his belt and the miniature microphone in his shirt pocket.

Being this equipped, Edwards telephoned appellant at about three p. m. on April 20, 1954, in an effort to elicit some admissions from him. This conversation was recorded, but, when it was played back in Stenholm's office, it proved to be partially unintelligible. Edwards made a second call, which proved to be more intelligible. Edwards then arranged for a meeting that evening. They sat in appellant's car outside the China Pheasant cafe, where a conversation of approximately an hour between Edwards and appellant was recorded. These original wire records are inaudible without the aid of earphones.

Later, Chief Stenholm took the wire recording to Electricraft, Inc., and a Mr. Runchey "dubbed" the conversation from the original wire recording, by a standard reproduction process, to a tape recording, which can be played audibly without recourse to earphones. Stenholm and Edwards testified that they listened with earphones to the original recordings, and Stenholm was present when Runchey made the audible tape recording.

The original wire recording is the state's exhibit No. 59, and the audible tape recording "dubbed" from the original is the state's exhibit No. 60.

Appellant contends the admission of these exhibits was error because the conversations are partially unintelligible. In State v. Salle, 34 Wn. (2d) 183, 208 P. (2d) 872, and State v. Slater, 36 Wn. (2d) 357, 218 P. (2d) 329, we held that the mere fact that some portion of a recording is inaudible, does not render the entire recording inadmissible.

Appellant contends that the exhibits were not properly identified. We do not agree. They were traced from the time of making the original recording until they were admitted in evidence, and Edwards testified, after the recording had been played for the jury, that the voices were those of appellant and himself.

 Appellant contends that the audible tape recording is secondary evidence and is not admissible because the best evidence is available.

The audible tape recording bears the same relationship to the inaudible wire recording that a photograph bears to a negative. No good purpose would be served by not following the rule applicable to them. See 3 Wigmore on Evidence (3d ed.) 196, § 796. We hold the tape recording was admissible.

 Appellant contends the recording was not knowingly and voluntarily made, and that it contained prejudicial obscenity. That may all be true, without affecting the admissibility of the recording.

Appellant assigns error to the giving of instruction No. 14. This instruction was given in the case of *State v. Bogart,* 21 Wn. (2d) 765, 153 P. (2d) 507, wherein it is set out in full and approved. It is pertinent to the instant case, and, being a part of the decided law of this state, it is not necessary to repeat it. The assignment is without merit.

The same situation is presented as to appellant's assignment of error to the giving of instruction No. 33. This is taken practically verbatim from an instruction approved in *State v. Wappenstein, supra,* as set out at p. 525. We adhere to the decided rule of law as therein promulgated.

Instruction No. 18 deals with what the state must prove. It reads as follows:

"You have heretofore been instructed that the State must prove, with respect to each count charged in the information, that the asking or receiving of the bribe, if any, be upon an agreement or understanding that the defendant's acts would be influenced thereby.

"You are hereby instructed further, in connection with this 'agreement or understanding' requirement, that it is not necessary that the State prove that an understanding existed in the sense of an agreement between the defendant and the person or persons approached, if any person or persons were approached, but that it is sufficient if the State proves an understanding on the part of the defendant that his official action would be influenced by the payment."

Appellant contends that, because the instruction does not end with the words, "if any payment was made," it assumes that a payment was made and, hence, constitutes a comment upon the evidence by the court. Such a conclusion is unjustified. See *State v. Emmanuel*, 42 Wn. (2d) 799, 259 P. (2d) 845, where virtually the same language as the instant instruction No. 18, was used and approved.

Instruction No. 21 reads:

"You are instructed that the criminality of asking and receiving a bribe is not affected by the fact that the act induced, or sought to be induced, was a proper one or one that the officer in his official capacity was legally bound to do or one which he had already decided to do."

Appellant took the exception that (a) the word *criminality* should have been defined by the court, and (b) the instruction indicates that a man could be bribed as to an act he had already done or decided to do.

These exceptions are all that can be considered upon appeal. See Rule of Pleading, Practice and Procedure 10, 34A Wn. (2d) 75; *Shields v. Paarmann*, 41 Wn. (2d) 423, 249 P. (2d) 377. We, therefore, disregard appellant's new theories presented upon the appeal for the first time.

(a) As to the word *criminality*, the record is silent regarding a defining instruction proposed by appellant, which is required before he can raise the issue on appeal. See 53 Am. Jur., Trial, 490, § 632; *State v. Johnson*, 19 Wash. 410, 53 Pac. 667; *State v. Armstrong*, 37 Wash. 51, 79 Pac. 490; *State v. Churchill*, 52 Wash. 210, 100 Pac. 309. In any event, the word does not need definition. The applicable rule is stated in 1 Reid's Branson Instructions to Juries (3d ed.) 169, § 55, as follows:

"The court in the trial of a criminal case is required to define technical words and expressions, but not words and expressions which are of ordinary understanding and self-explanatory."

(b) One who asks or receives a bribe to influence his official acts, can avail himself nothing by the defense that

he intended to do them anyway. The instruction correctly states the law.

■ Appellant assigns error to the giving of instruction No. 24, which reads:

"I instruct you that personal participation of one accused of asking and receiving a bribe is not necessary, and it is sufficient that the act is accomplished through the agency of others."

The objection is that there was no evidence of any agency to which the instruction was pertinent. We do not agree. The stove and hot-water heater, with which the Alnutt count of the information is concerned, were not delivered by Alnutt but by the Puget Sound Furniture Company, and they were not delivered to appellant personally but to his address, where they were received and receipted for by a woman. The instruction was not only proper, but necessary with this factual background.

■ Appellant assigns error to the giving of instruction No. 25, which reads:

"You are instructed that it is not an essential element of the crime of Asking and Receiving a Bribe that the act for which the bribe is asked or received be actually accomplished; the offense is complete when the bribe is offered and accepted for the purpose of influencing official action."

We approved a statement of the law in virtually the same language in *State v. Whetstone, supra.* We do so again in the instant case.

■ Appellant assigns error to the trial court's refusal to give proposed instructions Nos. 16 and 23, which he excepted to by simply stating that they were correct statements of the law.

We have held that such an exception is too general to comply with the requirements of Rule of Pleading, Practice and Procedure 10, 34A Wn. (2d) 75. See, also, *Drainage Dist. No. 2 of Snohomish County v. Everett,* 171 Wash. 471, 18 P. (2d) 53, 88 A. L. R. 123; *Keseleff v. Sunset Highway Motor*

*Freight Co.*, 187 Wash. 642, 60 P. (2d) 720. The assignment is without merit.

The judgment is affirmed.

HAMLEY, C. J., HILL, WEAVER, and ROSELLINI, JJ., concur.

———

September 28, 1955. Petition for rehearing denied.

