
FILED
COURT OF APPEALS DIV I
STATE OF WASHINGTON

2018 MAY 21 AM 9: 11

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| In the Matter of the Detention of J.S., | No. 77763-7-I |
| | DIVISION ONE |
| | UNPUBLISHED OPINION |
| Appellant. | FILED: May 21, 2018 |

MANN, A.C.J. — J.S. appeals an order involuntarily committing him to Western State Hospital (WSH) for 180 days of mental health treatment. He claims that (1) the pattern instruction on the burden of proof was constitutionally defective and (2) his counsel was ineffective for failing to object to the allegedly defective instruction and for failing to request a limiting instruction for ER 703 evidence. We affirm.[1]

## FACTS

In December 2015, J.S. was released after serving a 13-year-long prison sentence for first degree assault, a crime that involved J.S. shooting at a law enforcement officer. After his release, J.S. moved into the Hudson Hotel in Longview. At the Hudson Hotel J.S. decompensated: he stopped taking his medication, began suffering from auditory hallucinations, became agitated, and

---

[1] The Respondent, State of Washington, Department of Social and Health Services, filed a motion to amend its brief. The motion is granted.

threatened to kill people. He was taken to the Emergency Department at St. John's Medical Center. At St. John's, he became irritable, made threatening statements about wanting to "stab someone in the throat and snap someone's neck," talked out loud to himself, requested a "pill so he could kill himself," upset other patients, shadow boxed, and assaulted a nursing assistant.

In March 2016, J.S. was found to be gravely disabled as a result of mental disorder in Cowlitz County Superior Court proceedings and committed to WSH for up to 180 days of involuntary treatment. In August 2016, J.S.'s treating psychologist, Dr. Larry Arnholt, and psychiatrist, Dr. Gary Faulstich, petitioned the Pierce County Superior Court for an order allowing up to 180 days of additional involuntary treatment at WSH. Dr. Arnholt and Dr. Faulstich supported the petition with a declaration concluding that J.S. was gravely disabled and unable to independently attend to his own basic needs, and that there "are no known available appropriate less restrictive placement options available at this time."

At trial, Dr. Arnholt testified that J.S. was a patient on his ward at WSH. Dr. Arnholt explained that after J.S.'s initial release from prison to the Hudson Hotel he stopped taking his medication. J.S. objected to the lack of foundation. After the trial court sustained the objection, Dr. Arnholt explained that he reviewed J.S.'s records and history for treatment purposes. Dr. Arnholt was allowed to continue and explained that after his release to the Hudson Hotel, J.S. stopped taking his medication and began to decompensate and hallucinate. Dr. Arnholt explained that J.S. was taken to St. John's Medical Center where he

assaulted a nursing assistant. After J.S. again objected to lack of foundation, Dr. Arnholt explained that he had reviewed and relied on J.S.'s history, intake assessment, staff notes, direct observations, and that these records were regularly used in the field of psychology to form the basis of a diagnosis.

Dr. Arnholt testified that J.S. suffers from "schizo-affective disorder, bi-polar type." He also testified that J.S. suffers from delusions and auditory hallucinations. For example, J.S. walked out of WSH after "God or the spirits had provided an open door for him to leave." Dr. Arnholt believed that J.S. was gravely disabled and that he would not be able to care for his essential health and safety needs if he were released from WSH because J.S. denies that he has a mental disorder and refuses to take his medicine. He conceded that J.S. had not assaulted anyone at WSH, but noted that J.S. allegedly assaulted a nurse at St. John's Emergency Department. J.S. objected to this on hearsay grounds, but the court overruled the objection as Dr. Arnholt used the information to form his expert opinion. Dr. Arnholt testified that J.S. was "not ready" for less restrictive treatment.

Dr. Faulstich, J.S.'s treating psychiatrist at WSH, testified that he believed that J.S. suffered from "schizo-affective disorder." Dr. Faulstich also testified that J.S. suffers from delusions. For example, J.S. describes "bizarre situations like having been raped at Eastern State Hospital by numerous Hell's Angels and also apparently, he believes that he was raped by the psychiatrist and the nursing staff at Eastern State Hospital, and [at WSH's ward] he complains that he's being raped every night." Dr. Faulstich testified, for example, that J.S. requested an x-

-3-

ray "to see if his spine [was] glowing red because of these anal penetrations." In Dr. Faulstich's opinion, J.S.'s disorder was "near a 9 or 10" on a 1 to 10 scale, and that he was "floridly psychotic." He testified that he believed J.S. was gravely disabled and that if he were to leave WSH he would decompensate.

The jury found J.S. suffered from a mental disorder and was gravely disabled. It also found that detention in a less restrictive setting than WSH was not in his best interest. J.S. appeals the commitment order.

## ANALYSIS

### Jury Instruction Defining Clear, Cogent, and Convincing Evidence

J.S. first contends that jury instruction 4, which defined clear, cogent, and convincing evidence, was constitutionally defective because it diminished the State's burden of proof.

### 1. Review of Error Not Raised Below

Because J.S. did not object to jury instruction 4, we must first decide if it is appropriately before us. "It has long been the law in Washington that an 'appellate court may refuse to review any claim of error which was not raised in the trial court.'" State v. O'Hara, 167 Wn.2d 91, 97-98, 217 P.3d 756 (2009) (quoting RAP 2.5(a)); State v. Lyskoski, 47 Wn.2d 102, 108, 287 P.2d 114 (1955). There are, however, exceptions to the general rule. Once such exception is that "a party may raise . . . manifest error affecting a constitutional right" for the first time on appeal. RAP 2.5(a)(3); State v. Lamar, 180 Wn.2d 576, 582, 327 P.3d 46 (2014). In order to satisfy RAP 2.5(a)(3) and raise an error for the first time on appeal, the defendant must demonstrate that the error is

manifest and that the error "is truly of constitutional dimension." O'Hara, 167 Wn.2d at 98.

Jury instructions that misstate or shift the burden of proof are constitutional errors. State v. Kalebaugh, 183 Wn.2d 578, 584, 355 P.3d 253 (2015). Thus, we must determine if the alleged error was manifest.

In order to show that the alleged error was manifest, RAP 2.5(a)(3) requires a showing of actual prejudice. O'Hara, 167 Wn.2d at 99. To show actual prejudice, the defendant must make "a plausible showing" that "the claimed error had practical and identifiable consequences in the trial." Lamar, 180 Wn.2d at 583. "[T]o determine whether an error is practical and identifiable, the appellate court must place itself in the shoes of the trial court to ascertain whether, given what the trial court knew at that time, the court could have corrected the error." O'Hara, 167 Wn.2d at 100. "'If the trial court could not have foreseen the potential error or the record on appeal does not contain sufficient facts to review the claim, the alleged error is not manifest.'" Lamar, 180 Wn.2d at 583 (quoting State v. Davis, 175 Wn.2d 287, 344, 290 P.3d 43 (2012)).

2.    Jury Instruction 4 Was Not Manifest Error

The State may involuntarily commit a person for 180 days if, after a 180-day commitment, she or he continues to be "gravely disabled." RCW 71.05.320(1), (4)(d), (6)(b); RCW 71.05.280(4).[1] The State must prove that a

---

[1] "Gravely disabled" means a condition in which a person, as a result of a mental disorder:
    (a) is in danger of serious physical harm resulting from a failure to provide for his or her essential human needs of health or safety; or

No. 77763-7-I/6

person is "gravely disabled" by clear, cogent, and convincing evidence. RCW 71.05.310. This means that the ultimate fact in issue must be "highly probable." In re Det. of LaBelle, 107 Wn.2d 196, 209, 728 P.2d 138 (1986).

Jury instruction 4 provided:

> Dr. Gary Faulstich and Dr. Larry Arnholt are the petitioners and have the burden of proving each element of their case by clear, cogent, and convincing evidence. Clear, cogent, and convincing evidence exists when the element has been shown by the evidence to be highly probable.
> Proof by clear, cogent, and convincing evidence requires a greater showing than is required under the "preponderance of the evidence" standard that is used in many other civil cases. Preponderance of the evidence exists when an element has been shown to be more probably true than not true.
> On the other hand, proof by clear, cogent, and convincing evidence does not require as great a showing as is required under the "reasonable doubt" standard used in criminal cases. Reasonable doubt means such a doubt as exists in the mind of a reasonable person after fully, fairly, and carefully considering all the evidence or lack of evidence.
> "Preponderance of the evidence" and "beyond a reasonable doubt" are defined here solely to aid you in understanding the meaning of "clear, cogent, and convincing" evidence.

Jury instruction 4 was adopted verbatim from the then existing WPI 360.06. 6A WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CIVIL 360.06 (6th ed. 2016) (WPI).

J.S. argues that jury instruction 4 diminished the State's burden of proof because, by attempting to provide context to the jury for the intermediate clear, cogent, and convincing standard of review necessary in a civil commitment case,

---

(b) manifests severe deterioration in routine functioning evidenced by repeated and escalating loss of cognitive or volitional control over his or her actions and is not receiving such care as is essential for his or her health or safety.
RCW 71.05.020(17).

-6-

the instruction misstated the burden of proof in a criminal case. J.S. asserts that the third paragraph of jury instruction 4 should have expressly stated that in a criminal case the State must prove each element of the crime beyond a reasonable doubt. And by failing to state that a criminal defendant's guilt must be proved beyond a reasonable doubt, the instruction effectively reduced the burden of proof necessary in a criminal case and consequently effectively reduced the level of proof necessary for clear, cogent, and convincing evidence.

We disagree. It was not manifest error for the trial court to instruct the jury using the pattern instruction's definition for clear, cogent, and convincing evidence. As J.S. concedes, the trial court correctly instructed the jury that before J.S. could be committed, the State must prove by clear, cogent, and convincing evidence that he has a mental disorder or was gravely disabled as a result of a mental disorder. The jury was also properly instructed that clear, cogent, and convincing evidence "exists when the element has been shown by the evidence to be highly probable." The jury was properly instructed that Dr. Faulstich and Dr. Arnholt, as petitioners, carried the burden of proving each element of the case by clear, cogent, and convincing evidence. Because the trial court could not have foreseen the potential error, and because nothing in the record suggests that the jury either shifted the burden of proof or applied a lower standard for clear, cogent, or convincing evidence, the alleged error was not manifest. Lamar, 180 Wn.2d at 583. Accordingly, because the claimed error was not manifest, J.S. may not raise this issue for the first time on appeal. RAP 2.5(a)(3).

*Ineffective Assistance of Counsel*

J.S. next contends that he was denied the effective assistance of counsel because his counsel failed to object to jury instruction 4 and failed to request a limiting instruction on the use of ER 703 expert testimony.

Subjects of commitment proceedings have the right to effective assistance of counsel. In re Det. of T.A.H.-L., 123 Wn. App. 172, 179, 97 P.3d 767 (2004). "To establish ineffective assistance of counsel, the defendant must establish that his attorney's performance was deficient and the deficiency prejudiced the defendant." State v. Kyllo, 166 Wn.2d 856, 862, 215 P.3d 177 (2009) (citing Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)). Counsel's performance is deficient if it falls below an objective standard of reasonableness. "Reasonable conduct for an attorney includes carrying out the duty to research the relevant law." Kyllo, 166 Wn.2d at 862. "The prejudice prong requires the defendant to prove that there is a reasonable probability that, but for counsel's deficient performance, the outcome of the proceedings would have been different." Kyllo, 166 Wn.2d at 862. "If either element of the test is not satisfied, the inquiry ends." Kyllo, 166 Wn.2d at 862.

"Because the presumption runs in favor of effective representation, the defendant must show in the record the absence of legitimate strategic or tactical reasons supporting the challenged conduct of counsel." State v. McFarland, 127 Wn.2d 322, 336, 899 P.2d 1251 (1995). "[T]he presumption of adequate representation is not overcome if there is any 'conceivable legitimate tactic' that can explain counsel's performance." In re Det. of Hatfield, 191 Wn. App. 378,

402, 362 P.3d 997 (2015) (quoting State v. Reichenbach, 153 Wn.2d 126, 130, 101 P.3d 80 (2004)).

1.    Jury Instruction 4

J.S. contends that his counsel was ineffective for not objecting to jury instruction 4. This is so, he asserts, because several months prior to his trial in early December 2016, Division Three of this court suggested in Involuntary Treatment of A.J., 196 Wn. App. 79, 84, 383 P.3d 536 (2016), that WPI 360.06 "could be improved." We disagree.

The court in A.J. found that trial counsel provided effective assistance despite A.J.'s argument that his counsel was ineffective for agreeing to the use the pattern WPI 360.06—an instruction identical in form to jury instruction 4. 196 Wn. App. at 84. The court concluded that it "is not deficient representation to fail to object when the court gives the jury a pattern jury instruction." A.J., 196 Wn. App. at 84 (citing State v. Studd, 137 Wn.2d 533, 551, 973 P.2d 1049 (1999)). In dictum, however, Division Three observed that "though we find counsel provided effective representation, A.J.'s suggestion that the instruction could be improved is well taken. The Washington Pattern Instructions Committee should consider revising the instruction to make clear that under the reasonable doubt standard the jury must find the essential facts beyond a reasonable doubt." A.J., 196 Wn. App. at 84.[2]

---

[2] In response to A.J., WPI 360.06 has been revised so the third paragraph now states: On the other hand, proof by clear, cogent, and convincing evidence does not require as great a showing as is required under the "reasonable doubt" standard used in criminal cases. In a criminal case, the state has the burden of proving each element of a crime beyond a reasonable doubt. Reasonable doubt means

Where an attorney should have been on notice that a pattern jury instruction was improper, our Supreme Court has found ineffective assistance of counsel. In Kyllo, for example, the Court found ineffective assistance of counsel where defense counsel failed to object to a pattern self-defense instruction that had previously been disapproved of in three prior decisions; those decisions—in 1997, 2001, and 2004—should have alerted the attorney in late 2004 of the impropriety of the jury instruction. 166 Wn.2d at 868. However, when a "then unquestioned" pattern instruction is used, counsel cannot be faulted for failing to object to that instruction. Studd, 137 Wn.2d at 551.

Here, using the pattern jury instruction was not deficient performance for two reasons. First, the A.J. court did not hold WPI 360.06 to be defective; it only explained that the instruction "could be improved" upon. 196 Wn. App. at 84. Second, even if the A.J. court had declared WPI 360.06 defective, because A.J. was published less than three months before J.S.'s trial, this case is more like Studd than Kyllo. Failure to object to use of WPI 360.06 in this case did not fall below an objective standard of reasonableness.

2.     Failure to Request a Limiting Instruction

J.S. next contends that his trial counsel was deficient for failing to request a limiting instruction regarding the records that formed the basis of the State's experts' opinions. We disagree.

---

such a doubt as exists in the mind of a reasonable person after fully, fairly, and carefully considering all the evidence or lack of evidence.
WPI 360.06 (revised language emphasized).

At trial, Dr. Arnholt testified about J.S.'s behavior before he came to WSH and came under Dr. Arnholt's care. Dr. Arnholt's testimony was based on his review of J.S.'s psychiatric assessment and community mental health records, which contained information from St. John's Medical Center, a hospital that had treated J.S. before he came to WSH. J.S.'s counsel objected on grounds of lack of foundation and hearsay to this testimony. The court sustained several of J.S.'s objections on the ground that the State had not laid a foundation. In closing, J.S.'s counsel argued that the jury should only consider the behavior of J.S. at WSH and emphasized that he had not assaulted anyone while there. J.S.'s counsel did not, however, request a limiting instruction for J.S.'s alleged assault at St. John's Emergency Department.

J.S. again fails to rebut the strong presumption that his counsel's representation was ineffective. The failure to request a limiting instruction did not constitute deficient performance here. The record shows that J.S.'s trial counsel used the experts' testimony to attack their credibility. In cross-examining Dr. Arnholt, for example, J.S.'s counsel emphasized that J.S. had not assaulted anyone and had been well-behaved at WSH. J.S.'s counsel also extracted concessions from Dr. Arnholt regarding the psychologist's failure to review mental health records from J.S.'s incarceration and the psychiatric record's limited scope. And J.S.'s counsel also objected numerous times to Dr. Arnholt's testimony about prejudicial information contained in medical records that Dr. Arnholt used to form the basis of his opinion. A limiting instruction arguably would have bolstered the experts' credibility. On this record, J.S. cannot

-11-

demonstrate the absence of a legitimate strategic or tactical reason supporting his challenge. <u>McFarland</u>, 127 Wn.2d at 336. The failure to request a limiting instruction did not fall below an objective standard of reasonableness.

Affirmed.

_Mann, A.C.J._

WE CONCUR:

_Cox, J._                    _Becker, J._