IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 37147-6-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| ZACHARY STEVEN SKONE, | ) | |
| | ) | |
| Appellant. | ) | |

LAWRENCE-BERREY, J. — Zachary Skone appeals his convictions of first degree assault (with a firearm enhancement), two counts of unlawful possession of a firearm (UPFA), and attempted bribery of a witness. We vacate one of Skone's unlawful possession of a firearm convictions, remand for resentencing, and direct the trial court to strike the deoxyribonucleic acid (DNA) collection fee. We otherwise affirm.

## FACTS

On January 11, 2018, Zachary Skone went to the drive-through window of a coffee shop and ordered a drink. He told the barista he was "running from the pigs." Report of Proceedings (RP) at 428. Looking inside Skone's car, the barista saw that Skone had a revolver. The barista reported this to the police.

Three days later, on January 14, Skone shot Dane Alexander at the Montlake boat launch on Moses Lake. Alexander had come to the boat launch as part of a drug deal when Skone attacked him, firing a .22 caliber revolver. Skone admitted to police that he shot Alexander, but claimed he was protecting a friend.

The State charged Skone by amended information with one count of first degree assault, one count of first degree robbery, two counts of first degree unlawful possession of a firearm, and one count of bribing a witness. With respect to the first two counts, the State alleged a firearm enhancement and that Skone had committed the offenses to obtain or advance his position in a gang.

The State contended Skone was either a gang member or wanted to be in the Norteños gang. It offered evidence that Skone called himself "Little Wigga" and recorded a video on his phone the day before the shooting in which he said he was doing a "whole lotta gang" stuff. RP at 1072, 1076.

During the trial, juror 5 approached the bailiff to express concern about gang retaliation against jurors if Skone was convicted. The bailiff told the juror he had a job to do and needed to focus. The bailiff brought this to the trial court's attention, who spoke to the parties about it.

The trial court and the parties agreed that the court should have a colloquy with juror 5 outside the presence of the other jurors. Defense counsel emphasized the court needed to "gingerly walk that line between not inquiring too much of the jurors and implanting that significant bias." RP at 1490. They discussed the nature of the court's inquiry and the type of questions that could and should be asked.

The trial court then questioned juror 5 with the parties present. The juror said he had earlier expressed to the entire jury a concern for the possibility of gang retaliation and the jurors shared his concern. When asked by the court whether his concern would affect his ability to evaluate the evidence and follow the court's instructions of the law, juror 5 said it would not.

The trial court and the parties agreed that all of the jurors needed to go through the same process. Defense counsel seemed satisfied with juror 5 but wanted additional time to process the juror's responses. The trial court remarked:

> [I]n any case a juror is going to have their own thoughts and whether they express it out loud to us ever, we will have no idea. So they will already be thinking, am I nervous about making a decision? Am I nervous about retaliation? I mean that's already probably going through their head in any jury trial that I can imagine. It's just unfortunate, of course, that this person has decided to express it out loud, rather than follow the instructions and just keep it to themselves.

RP at 1509.

3

The trial court then interviewed the rest of the jurors in the same manner, taking each aside, asking what they had heard or said, and then asking whether their ability to decide the case based on the evidence and the court's instructions on the law would be impaired. During the interviews, defense counsel had initial concerns only about jurors 2 and 5; but afterward, Skone and his counsel agreed there were no issues and the trial could continue without recusing any of the jurors.

The trial court commented it had not heard anything from juror 5 appearing to manifest unfitness. The court also noted that the interviews established there was no further discussion and there was no indication the jurors had discussed the case itself in any form or fashion or any of the trial evidence.

The jury found Skone guilty of first degree assault with a firearm but agreed he did not commit the crime to obtain or advance his position in a gang. It also found him guilty of both counts of first degree unlawful possession of a firearm, as well as attempted bribery of a witness. It found him not guilty of first degree robbery.

At sentencing, Skone did not contest the State's sentencing memorandum that argued the two firearm convictions were different criminal conduct nor did he challenge the State's offender score calculation of 6, which showed 1 point for each of the two firearm convictions. The trial court imposed a standard range sentence of 262.5 months.

4

Skone appealed to this court.

ANALYSIS

JURY BIAS

Skone contends the trial court failed to ensure he received a fair trial by an unbiased jury. He argues that some of the jurors discussed the case before deliberations, the trial court actively avoided gathering more specific information, and it compounded the jurors' preconception of danger by offering police escorts to their cars. We disagree that the trial court did anything improper.

The right to be tried by an impartial jury is fundamental to the fairness of the trial and explicitly protected by the Sixth Amendment to the United States Constitution and article I, section 22 of the Washington Constitution. This right "means a trial by an unbiased and unprejudiced jury, free of disqualifying jury misconduct." *State v. Tigano*, 63 Wn. App. 336, 341, 818 P.2d 1369 (1991).

We initially question whether juror misconduct occurred at all. The jurors did not discuss the case. Rather, they discussed their safety. The trial court aptly observed that jurors probably always have some degree of concern if they render a guilty verdict in a criminal case. Here, the trial court and the parties had an opportunity to inquire further

5

about this concern and make doubly sure the jurors would base their verdict on the facts presented and the law given to them.

Even if misconduct did occur, it likely benefited Skone. Had the jury believed Skone was involved in gangs, this belief might have made it more difficult for them to find Skone guilty.

Also, a mistrial is not appropriate when the trial court is satisfied beyond a reasonable doubt that the misconduct will not contribute to the verdict. *State v. Fry*, 153 Wn. App. 235, 239, 220 P.3d 1245 (2009). Here, defense counsel and Skone were satisfied. So was the trial court.

"[T]he trial court is in the best position to determine a juror's ability to be fair and impartial." *State v. Noltie*, 116 Wn.2d 831, 839, 809 P.2d 190 (1991). Reviewing courts defer to the trial court's determination on this issue. *Ottis v. Stevenson-Carson Sch. Dist. No. 303*, 61 Wn. App. 747, 755-56, 812 P.2d 133 (1991). Moreover, defense counsel's and Skone's agreement that each of the 12 jurors could fairly decide the case cannot be overlooked. We are convinced not only that the trial court did not err but commend the trial court for doing a conscientious job ensuring Skone's right to a fair trial.

DOUBLE JEOPARDY

Skone contends the two unlawful possession of a firearm convictions were based on the same course of conduct without the State showing an intervening event. Because of this, he argues that double jeopardy applies and this court must vacate one of the charges. We agree.

We first address the State's argument that Skone waived his right to raise this argument by not objecting at sentencing to the entry of separate unlawful possession of a firearm convictions or his purported offender score of 6. In support of this, the State cites *State v. Nitsch*, 100 Wn. App. 512, 997 P.2d 1000 (2000). *Nitsch* discussed a statutory "same criminal conduct" analysis, not a constitutional double jeopardy issue.

"A double jeopardy violation claim is distinct from a 'same criminal conduct' claim and requires a separate analysis." *State v. French*, 157 Wn.2d 593, 611, 141 P.3d 54 (2006). Double jeopardy is a constitutional protection, focusing on the "allowable unit of prosecution." *Id.* Same criminal conduct is a statutory sentencing provision, involving the scoring of offenses that examines whether the offenses consisted of the same intent, time, place, and victim. *Id.* at 613 (citing RCW 9.94A.589(1)(a)).

A double jeopardy claim may be raised for the first time on appeal. *State v. Jackman*, 156 Wn.2d 736, 746, 132 P.3d 136 (2006). Whether double jeopardy has been violated is a question of law that we review de novo. *Id.*

The principle of double jeopardy prevents a person from being "twice put in jeopardy for the same offense." WASH. CONST. art. I, § 9; *State v. Villanueva-Gonzalez*, 180 Wn.2d 975, 980, 329 P.3d 78 (2014). "The prohibition on double jeopardy generally means that a person cannot be prosecuted for the same offense after being acquitted, be prosecuted for the same offense after being convicted, or receive multiple punishments for the same offense." *Villanueva-Gonzalez*, 180 Wn.2d at 980. It is this last principle that we examine here.

When examining a purported double jeopardy violation, this court looks to "what act or course of conduct has the Legislature defined as the punishable act." *State v. Adel*, 136 Wn.2d 629, 634, 965 P.2d 1072 (1998). Unlawful possession of a firearm is a single unit of prosecution even when committed in different places because it rests on a course of conduct rather than a discrete act. *State v. Mata*, 180 Wn. App. 108, 120, 321 P.3d 291 (2014). Therefore, to prove two separate charges, the State must show that Skone's possession of the firearm was interrupted. *Id.*

Here, the State argues it does not need to show Skone's possession was interrupted because the charges were based on possession of different firearms and the evidence supports this. We disagree.

The barista in the drive-through only said he witnessed Skone in possession of a revolver. Three days later, Skone shot Alexander with a .22 caliber revolver. No evidence was presented to show these revolvers were different.

Moreover, the court's instructions never asked the jury to find that Skone possessed different firearms or that his possession was interrupted. The State argued in closing that Skone had a firearm at the coffee drive-through and during the shooting. It claimed the firearm was "a revolver" on both occasions. It disputed Skone's claim that he only had a flare gun at the coffee drive-through. It argued "he had at least one firearm on him . . . that's the one the [S]tate's charged him with." RP at 1633.

"When a person is charged with multiple counts of the same offense, 'each count must be based on a separate and distinct criminal act.'" *State v. Robinson*, 8 Wn. App. 2d 629, 638, 439 P.3d 710 (2019) (quoting *State v. Mutch*, 171 Wn.2d 646, 662, 254 P.3d 803 (2011)). While the reviewing court looks to the entire record, review is "rigorous and is among the strictest" to protect against double jeopardy. *Mutch*, 171 Wn.2d at 664. It must be "'manifestly apparent'" from the record, testimony, and argument that the two

identical charges are based on separate acts. *Id.* (emphasis omitted) (quoting *State v. Berg*, 147 Wn. App. 923, 931, 198 P.3d 529 (2008)).

Here, the State cannot argue to the jury that Skone possessed the same gun for both offenses and make a different argument on appeal. Because the record does not sufficiently show that both unlawful possession of a firearm convictions rest on separate and distinct conduct, one of Skone's unlawful possession of a firearm convictions must be vacated.

DNA COLLECTION FEE

A court may not impose a DNA collection fee if DNA has already been collected. RCW 43.43.7541; *State v. Ramirez*, 191 Wn.2d 732, 745-47, 426 P.3d 714 (2018). Skone contends the trial court erred in imposing a DNA collection fee where one had previously been collected. The State correctly concedes this was in error, and we agree.

When resentencing Skone, the trial court must strike the DNA collection fee.

STATEMENT OF ADDITIONAL GROUNDS FOR REVIEW (SAG)

SAG I: LACK OF FOUNDATION

Skone contends there was a lack of foundation regarding the bullet shown to the jury during Detective Aaron Hintz's testimony. There was no objection to the bullet being admitted or the detective's opinion about it. An issue may generally not be raised

for the first time on appeal unless there is a manifest error of constitutional magnitude.

RAP 2.5(a)(3).  Failure to lay an adequate foundation does not create manifest

constitutional error.  *State v. Newbern*, 95 Wn. App. 277, 288, 975 P.2d 1041 (1999).

Therefore, we will not review this issue.

SAG II:  NEW THEORY OF FACTS

Skone contends Alexander was nervous about going to the meeting on January 14

and that was why he carried a fake, but realistic toy pistol.  This is a new theory that

would have been best raised for the finder of fact to decide.  New theories presented for

the first time on appeal must be disregarded.  *State v. Lyskoski*, 47 Wn.2d 102, 111, 287

P.2d 114 (1955).

SAG III:  JUROR COERCION

Skone contends one of the jurors was coerced into changing their verdict on Mr.

Skone's assault charge.  Skone's argument is based on facts not in the record on appeal.

This court will not consider issues raised where the facts referenced are not in the

appellate record.  *State v. McFarland*, 127 Wn.2d 322, 333, 899 P.2d 1251 (1995).

No. 37147-6-III
*State v. Skone*

Remanded for resentencing.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to

RCW 2.06.040.

_____
Lawrence-Berrey, J.

WE CONCUR:

_____
Pennell, C.J.

_____
Siddoway, J.